In re Ralph E. RAISOR, Jr. and Joyce Gail Raisor, Debtors.

Ralph E. RAISOR, Jr. and Joyce Gail Raisor, Plaintiffs,

v.

EDUCATION LOAN SERVICING CENTER, INC. and United Student Aid Funds, Inc., Defendants.

Bankruptcy No. 93–41796.
Adv. No. 94–4112.

United States Bankruptcy Court,
E.D. Texas,
Sherman Division.

March 9, 1995.

Robert E. Barron, Allen Gregory, Nederland, TX, for plaintiffs/debtors.

Randall K. Lindley, Michelle Mendez, Dallas, TX, for defendant United Student Aid Funds, Inc.

## MEMORANDUM OPINION

C. HOUSTON ABEL, Chief Judge.

Before the Court is a Motion To Dismiss Complaint ("Motion to Dismiss") filed by United Student Aid Funds, Inc. ("USA Funds"). The Motion was set for a hearing and the Court took the matter under advisement at the conclusion of the hearing. The following shall constitute the Court's findings of fact and conclusions of law pursuant to Federal Rule of Bankruptcy Procedure 7052. Where appropriate, findings of fact shall be deemed conclusions of law and conclusions of law shall be deemed findings of fact.

## JURISDICTION

The Court has jurisdiction over this proceeding pursuant to 28 U.S.C. §§ 1334 and 157(a). This is a core matter pursuant to 28 U.S.C. § 157(b)(2)(I).

## FINDINGS OF FACT

1. Between 1987 and 1990, Ralph E. Raisor, Jr. and Joyce Gail Raisor ("Debtors") borrowed funds through Parent Loans For Undergraduate Students ("Plus Loans"). The Plus Loans were owned by Education Loan Servicing Center, Inc. and were the subject of one or more guaranties by USA Funds.

2. On December 20, 1993, the Debtors filed a petition for relief under Chapter 13 of Title 11.

3. The Debtors defaulted in the PLUS Loans prior to December 20, 1993.

4. On January 27, 1994, Education Loan Servicing Center, Inc. filed a proof of claim in the amount $11,166.39 ("Proof of Claim # 1"). Proof of Claim # 1 reflects that the first payment was due on September 2, 1987.

5. On January 27, 1994, Education Loan Servicing Center, Inc. filed another proof of claim in the amount $2,615.74 ("Proof of

Claim #2"). Proof of Claim #2 reflects that the first payment was due on February 1, 1991.

6. On January 27, 1994, Education Loan Servicing Center, Inc. filed notices that Proof of Claim #1 and Proof of Claim #2 were assigned to USA Funds.

7. On February 4, 1994, the Clerk of Court issued a Notice of Filing of Transfer of Claim regarding Proof of Claim #1 pursuant to Federal Rule of Bankruptcy Procedure 3001(e)(2).

8. On February 4, 1994, the Clerk of Court issued a Notice of Filing of Transfer of Claim regarding Proof of Claim #2 pursuant to Federal Rule of Bankruptcy Procedure 3001(e)(2).

9. After no objection to the transfer of either Proof of Claim #1 or Proof of Claim #2 was filed, the Clerk of Court issued on March 2, 1994, notices that Proof of Claim #1 and Proof of Claim #2 were transferred to USA Funds.

10. Proof of Claim #1 and Proof of Claim #2 represent unsecured debts of the Debtors and no objection to either claim were filed.

11. On July 12, 1994, the Debtors initiated this adversary proceeding against Education Loan Servicing Center, Inc. seeking a discharge of the PLUS Loans pursuant to 11 U.S.C. § 523(a)(8). The Debtors assert in their complaint that the PLUS Loans are dischargeable because the loans were first due more than seven years prior to the filing of their bankruptcy petition, or alternatively, the repayment of the loans would impose an undue hardship on the Debtors and their dependents.

12. On August 12, 1994, USA Funds filed a Motion to be Joined as Additional Party Defendant Due to Transfer of Interest. The Court entered an order granting the motion on September 16, 1994.

13. On August 12, 1994, USA Funds filed the Motion to Dismiss asserting that the complaint should be dismissed because the PLUS Loans were not first due more than

seven years prior to the filing of the bankruptcy petition and because the determination of undue hardship is premature.

14. On August 29, 1994, the Debtors filed their response to the Motion to Dismiss. The response was a singular paragraph stating that the Debtors objected to the Motion to Dismiss and request a hearing on the matter. No basis for the objection was stated nor was any authority in support of the objection provided in the response.

15. On September 21, 1994, the Court entered an Order Confirming the Debtors' First Amended Plan ("Plan"). Pursuant to the Plan, the "unsecured creditors shall receive in pro-rata amounts all amounts remaining after priority and secured debts are paid." The Plan provides for repayment of debts over forty-two months.

16. USA Funds is an unsecured creditor that is entitled to share in the pro-rata distribution paid to the unsecured creditors of the Debtors under the Plan.

17. The Debtors have not yet successfully completed their Plan.

18. The Debtors' Plan is scheduled for completion around June 1997.

19. The PLUS Loans were not first due more than seven years prior to the filing of the bankruptcy petition.

20. On January 10, 1995, a hearing was held on the Motion to Dismiss. At the hearing, the Debtors provided for the first time their authority for opposing the Motion to Dismiss. Because neither the Court nor counsel for USA Funds were prepared for the Debtors' arguments, the Court took the Motion to Dismiss under advisement.

## CONCLUSIONS OF LAW

Generally, a Chapter 13 debtor is not entitled to a discharge until after completion of payments under a confirmed plan. *See* 11 U.S.C. § 1328(a).[1] Excepted from the discharge are student loans which qualify

---

1. Under certain conditions, a debtor may request a "hardship discharge" even if the confirmed plan has not been successfully completed. *See* 11 U.S.C. § 1328(b).

under 11 U.S.C. § 523(a)(8).[2] *Id.* Section 523(a)(8) provides that a debt relating to a student loan may be discharged if the loan either first became due at least seven years prior to the filing of the bankruptcy petition or if not excepting the student loan from discharge would cause undue hardship on the debtor and the debtor's dependents. *See* 11 U.S.C. § 523(a)(8). Because the Plus Loans which are subject of this proceeding were first due within seven years prior to the filing of the bankruptcy petition, the only basis for discharging the loans is if the Debtors can establish that not discharging the loans would cause undue hardship on the Debtors and their dependents.

USA Funds asserts that the issue of undue hardship should only be considered if the Debtors successfully complete their Plan. Unless that first occurs, USA Funds argues the issue of dischargeability of the PLUS Loans is premature. The Debtors assert, to the contrary, that Federal Rule of Bankruptcy Procedure 4007(b) provides that a cause of action under § 523(a)(8) "may be filed at any time." Thus, this matter is ripe for consideration.

■ After reviewing the authorities cited by the parties and from the Court's own research, the Court is of the opinion that this matter is not ripe for consideration. The Fifth Circuit in *In re Rubarts*, 896 F.2d 107, 109 (5th Cir.1990), stated in *dictum* that the issue of dischargeability is not ripe under Chapter 13 until either after the Chapter 13. plan has been successfully completed or the debtor has applied for a hardship discharge under § 1328(b). Because neither of these two events has occurred to date, the matter before the Court is premature.

■ Additionally, the undue hardship discharge under § 523(a)(8) exception has been interpreted narrowly by the courts. Because neither the Bankruptcy Code nor the legislative history of the exception provides a clear definition of undue hardship, courts have generally applied a three part test to determine if a debtor's circumstances warrant a hardship discharge of the student loan. To establish undue hardship, the Debtors' are required to prove: (1) that the Debtors cannot maintain, based on current income and expenses, a "minimal" standard of living for themselves and their dependents; (2) that additional circumstances exist indicating that this state of affair is likely to persist for a significant portion of the repayment period of the student loans; and (3) that the Debtors have made good faith efforts to repay the loans. *In re Roberson*, 999 F.2d 1132, 1135 (7th Cir.1993); *Brunner v. New York State Higher Educ. Services Corp.*, 831 F.2d 395, 396 (2d Cir.1987); *In re Stebbins–Hopf*, 176 B.R. 784 (Bankr.W.D.Tex.1994).[3]

■ At this juncture, neither the parties nor the Court can fully address all of these factors. First, although the Debtors' current income and expenses may prohibit them from repaying the PLUS Loans, it is speculative at this time what the Debtors' income and expenses will be at the time the Plan is scheduled for completion. It is possible that the Debtors' income may increase during the life of the Plan and negate the need for the discharge of the PLUS Loans. Secondly, because other unsecured debts will be discharged after the completion of the Plan, the elimination of these debts could facilitate the Debtors' abilities to repay the PLUS Loans. Thirdly, by attempting to discharge the PLUS Loans prior to the completion of the Plan, the Debtors are not demonstrating a

---

**2.** Prior to 1990, student loans which were not dischargeable in a Chapter 7 case under § 523(a)(8) were dischargeable in a Chapter 13 case following the completion of payments under a confirmed plan. In 1990, Congress amended § 1328(a)(2) by inserting a cross-reference to § 523(a)(8) to make certain student loans nondischargeable. *See* 3 KEITH M. LUNDIN, CHAPTER 13 BANKRUPTCY § 9.13 (2d ed. 1994).

**3.** The Court notes that some courts apply a slightly different test which examines whether:

(1) it is reasonable, considering the debtor's current and future income and expenses, to require the debtor to repay some or all of the loan; (2) the debtor has made a good faith effort to repay the loan; and (3) allowing the discharge of the loan would thwart congressional intent of § 523(a)(8). *See In re Bakkum*, 139 B.R. 680, 683 (Bankr.N.D.Ohio 1992); *Higher Educ. Assistance Agency v. Johnson*, 5 Bankr.Ct.Dec. 532 (Bankr.E.D.Pa.1979).

good faith effort to repay the obligation. A good faith effort under Chapter 13 requires, at a minimum, an effort by the Debtors to first repay at least some of the PLUS Loans under the Plan and then perform an examination of their financial condition near the completion of the Plan to determine whether they can either repay some or all of the outstanding balances of the PLUS Loans. Fourthly, the Court can best follow congressional intent of preserving student loans from discharge if the Court can fully and accurately analyze the Debtors' financial condition at the time the discharge is granted. In furtherance of this intent, the Court over the past few years has ordered imaginative repayment terms based on the financial condition of the debtor to ensure that congressional intent is not frustrated. Finally, because there is uncertainty regarding whether the Plan will be completed and a discharge granted, proceeding further at this time is an inefficient use of very limited judicial resources. If the Plan fails and the case is dismissed, a judgment discharging the PLUS Loans would become moot and the trial would have been unnecessary. Accordingly, until all relevant facts can be presented to the Court, the determination of undue hardship is premature. *Cf. In re Cleveland,* 89 B.R. 69, 72 (9th Cir. BAP 1988); *In re Lee,* 89 B.R. 250, 257 (N.D.Ga.1987), *aff'd,* 853 F.2d 1547; *In re Battrell,* 105 B.R. 65, 67 (Bankr.D.Or.1989); *In re Williams,* 96 B.R. 149, 152 (Bankr.N.D.Ill.1989).[4]

█ Finally, the fact that Federal Rule of Bankruptcy Procedure 4007(b) provides that a § 523(a)(8) proceeding "may be filed at any time" is not controlling of the issue before the Court.[5] The lack of a time limitation should not be interpreted as meaning that any proceeding filed pursuant to Bankruptcy Rule 4007(b) is ripe for adjudication. Bankruptcy Rule 4007 does not determine whether a proceeding is ripe for adjudication but merely permits the filing of certain types of proceedings when the matter *is* ripe. For example, if the discharge was based on the fact that the student loans were first due more than seven years prior to the filing of the bankruptcy petition, the Court could proceed at this time. The Court could enter a judgment discharging the student loan pursuant to § 523(a)(8)(A) that is subject to the successful completion of the plan. Or, if this were a case under Chapter 7 which does not require the successful completion of a plan before a discharge is granted, the Court could proceed with this matter. However, because the Debtors are attempting to establish that the PLUS Loans should be discharged because of undue hardship, the Court at this stage of the case is unable to proceed.

## CONCLUSION

Because the Plus Loans were first due within seven years prior to the filing of the bankruptcy petition, the only basis to discharge the loans is to prevent undue hardship on the Debtors and their dependents. However, it is premature for the Court to determine whether or not the PLUS Loans will cause undue hardship if the loans are not discharged. Under Chapter 13, the appropriate time for this determination is near or at the time the plan is scheduled for completion. Until then, the Debtors must treat USA Funds similar to the other unsecured creditors. The Debtors may file a new complaint pursuant to § 523(a)(8) if the facts so warrant when this matter is ripe. Therefore, the Court will enter an order granting the Motion to Dismiss.

---

**4.** Each of the cited cases concerned the discharge of a Health Education Assistance Loan ("HEAL") which are considered somewhat more difficult to discharge because of the requirements of 42 U.S.C. § 292f(g) (originally enacted as 42 U.S.C. § 294f(g) and recodified on October 13, 1992). *See In re Barrows,* 1994 WL 675220 (Bankr.D.N.H.1994). Section 292f(g) requires a debtor to establish that failure to discharge the HEAL would be "unconscionable". Regardless of the higher burden, the analysis regarding when the discharge proceeding should be instigated *is* applicable *to* this case.

**5.** The rule also states that a "case may be reopened without payment of an additional filing fee for the purpose of filing a complaint to obtain a determination under this rule." FED.R.BANKR. PROC. 4007(b).