**In Re: Geoffrey Ifenay EKENASI, Debtor.**

**Geoffrey Ifenay Ekenasi, Plaintiff–Appellee,**

v.

**The Education Resources Institute; Pennsylvania Higher Education Assistance Agency, Defendants–Appellants,**

and

**Debra A. Wertman, Trustee.**

No. 02–1239.

United States Court of Appeals, Fourth Circuit.

Argued: Feb. 24, 2003.

Decided: April 16, 2003.

---

**ARGUED:** Steven Leftridge Thomas, Kay, Casto & Chaney, P.L.L.C., Charleston, West Virginia, for Appellants. An-

drew Steven Nason, Pepper, Nason & Hayes, Charleston, West Virginia, for Appellee.

Before TRAXLER and SHEDD, Circuit Judges, and C. Arlen BEAM, Senior Circuit Judge of the United States Court of Appeals for the Eighth Circuit, sitting by designation.

Reversed by published opinion. Judge TRAXLER wrote the opinion, in which Judge SHEDD and Senior Judge BEAM joined.

## OPINION

TRAXLER, Circuit Judge:

The Education Resources Institute and Pennsylvania Higher Education Assistance Agency ("Appellants") appeal an order of the district court affirming the bankruptcy court's order discharging Geoffrey Ifenay Ekenasi's student loan debts pursuant to 11 U.S.C.A. § 523 (West 1993 & Supp. 2002). Because we conclude that the bankruptcy court clearly erred in discharging Ekenasi's student loans more than two years before Ekenasi's scheduled completion of his confirmed Chapter 13 plan, we reverse.

### I.

Ekenasi is a native of Nigeria. He obtained a degree in political science at the University of Lagos, Nigeria, in 1978. In the late 1980s, he emigrated to the United States. Upon arriving in this country, he worked briefly in a factory and, for several years, as a taxi driver in New York City.

While working as a taxi driver, Ekenasi learned that he could attend law school in the United States and pay for his postgraduate education through student loans sponsored by the federal government. He was accepted to the West Virginia University College of Law, enrolled in classes in 1992, and graduated on schedule in 1995. In 1997, Ekenasi passed the West Virginia bar examination and obtained a license to practice law in that state. All of this was made possible by his receipt of nearly $90,000 in government-sponsored student loans.

In August 1997, Ekenasi filed a petition for bankruptcy under Chapter 13 of the Bankruptcy Code and a proposed Chapter 13 Plan (the "Plan"). At the time, Ekenasi was employed as a paralegal with the West Virginia Tax Department, a temporary position he had accepted while studying to pass the bar examination and seeking employment as a licensed attorney. As a paralegal, Ekenasi was earning a salary of approximately $22,000 per year and a net monthly income of $1,480. He claimed total monthly expenses of $1,180, which included a $253 student loan payment. His petition also claimed six children of minority age who resided with him in the United States. Ekenasi estimated the non-priority, unsecured claims against him to be $89,418 in student loan debt and $55,494 in other unsecured debt, for a total of $144,912.

Based upon his income and expenses, *including* the $253 per month student loan payment, Ekenasi claimed excess income of $300 per month. He proposed to make scheduled payments in the amount of $300 per month to the bankruptcy trustee for 60 months for distribution towards his "general unsecured" (*i.e.,* non-student loan) creditors only, while continuing to make his student loan payment directly to the student loan creditors. The Plan proposed that "cause exist[ed]" to extend Ekenasi's payment of the debt "over a period of more than 36 months" due to Ekenasi's desire "to pay student loans outside [the Plan] and pay 27% of [the] general unsecured debt through the trustee." J.A. 46. *See* 11 U.S.C.A. § 1322(d) (West Supp. 2002) (providing that a Chapter 13 "plan may not provide for payments over a peri-

od that is longer than three years, unless the court, for cause, approves a longer period, but the court may not approve a period that is longer than five years").

In February 1998, the bankruptcy court entered an order confirming Ekenasi's Chapter 13 Plan. Thus, Ekenasi's approved Plan, including its exception of the student loan creditors from any portion of the $300 payment made to the bankruptcy trustee, was premised upon his choice to continue making the student loan payment outside the Plan and directly to the student loan creditors. Ekenasi also obtained an extended payment period towards his other unsecured creditors by pointing to the very same choice.

Then, in May 1998, Ekenasi instituted this adversary proceeding, seeking a discharge of his student loan debts in their entirety on the basis that they imposed an undue hardship upon him. Since filing his Chapter 13 Plan, however, Ekenasi had passed the West Virginia bar examination and secured employment as an attorney with the West Virginia Bureau of Child Support Enforcement with a starting salary of $36,000 per year. In his complaint, Ekenasi represented that he was "unmarried but living in the same household as his ex-wife with his six (6) children ranging in age from four (4) years to seventeen (17) years old." J.A. 54. By 1999, Ekenasi's salary had increased to $39,899 and, by the time trial in the adversary proceeding commenced in December 2000, Ekenasi's salary had increased to $42,000 per year—nearly double the $22,000 salary he was earning when he filed his proposed Chapter 13 Plan claiming $300 in excess monthly income. Also by this time, two of the six children residing with Ekenasi in this country had achieved majority status. However, Ekenasi testified that he had three additional children (ages 18, 11 and 9) living in Nigeria who were dependent upon him for support and that he was

subject to a Nigerian court order for such support in the monthly amount of $300 per child.

In January 2001, the bankruptcy court entered an order granting Ekenasi a complete discharge of his student loan debts based on undue hardship. Although noting that Ekenasi had the education necessary to practice law, the bankruptcy court found that Ekenasi's nationality and language skills "impose[d] a barrier to [his] practicing law in a private practice setting or in a corporate setting." J.A. 232. Additionally, the bankruptcy court found that Ekenasi had nine children who were dependent upon him for support, including three children in Nigeria to whom he was obligated under a foreign support order requiring him to pay $900 per month. Based primarily upon these factors, the bankruptcy court found that Ekenasi "[did] not possess a reasonable likelihood of an increase in income" and would not likely "have additional disposable income to utilize towards paying back these student loans" after he completed payments under the Chapter 13 Plan. J.A. 233. These findings were made approximately two years before the scheduled conclusion of Ekenasi's Chapter 13 Plan. The district court affirmed on appeal.

## II.

Because the district court "act[ed] in its capacity as a bankruptcy appellate court, we review the bankruptcy court's decision independently." *Banks v. Sallie Mae Servicing Corp. (In re Banks)*, 299 F.3d 296, 300 (4th Cir.2002). We review the bankruptcy court's factual findings for clear error and its legal conclusions de novo. *See Kielisch v. Educational Credit Mgmt. Corp. (In re Kielisch)*, 258 F.3d 315, 319 (4th Cir.2001).

We begin with a brief summary of the Chapter 13 statutory provisions that are

pertinent to the proceeding before us. *See* 11 U.S.C.A. §§ 1301–1330 (West 1993 & Supp.2002). As an alternative to liquidation under Chapter 7, Chapter 13 of the Bankruptcy Code allows a debtor to propose ánd file a plan for payment to his creditors from his regular income, *see* 11 U.S.C.A. § 1321, within certain parameters, *see* 11 U.S.C.A. § 1322. After the petition and plan are filed, and notice is given, the bankruptcy court conducts a hearing on confirmation of the plan, at which time any party in interest may object to confirmation. *See* 11 U.S.C.A. §§ 1324, 1325. A Chapter 13 plan may not exceed a period longer than three years, unless the bankruptcy court approves a longer period "for cause." 11 U.S.C.A. § 1322(d). The bankruptcy court, however, "may not approve a period that is longer than five years." 11 U.S.C.A. § 1322(d).

■ Once a debtor has satisfied his payments under the confirmed plan, the bankruptcy court grants the debtor a discharge of all debts provided for by the plan, *see* 11 U.S.C.A. § 1328(a), but not those debts which are nondischargeable under 11 U.S.C.A. § 523(a).[1] The debtor remains personally responsible for all such nondischargeable debts. *See In re Kielisch,* 258 F.3d at 318 n. 1; *Internal Revenue Serv. v.*

*Cousins (In re Cousins),* 209 F.3d 38, 40 (1st Cir.2000).

■ Student loans, as a general rule, fall within the category of nondischargeable debts and pass through the bankruptcy process unaffected. *See In re Kielisch,* 258 F.3d at 320 (noting that Chapter 13 debtors ordinarily "remain personally responsible for their nondischargeable student loan debts, and those debts pass or ride through the bankruptcy unaffected and are a postbankruptcy liability of the former debtor") (internal quotation marks omitted). The federal government, under the Guaranteed Student Loan Program, "serves as guarantor of unsecured student loans and subsidizes interest payments on those loans." *In re Kielisch,* 258 F.3d at 319 (internal quotation marks omitted). However, Congress has also provided that such government-guaranteed student loans are nondischargeable in bankruptcy proceedings unless the debtor can demonstrate that repayment of the loans would constitute an "undue hardship." 11 U.S.C.A. § 523(a)(8) (West Supp.2002).[2] The exception of such government-sponsored student loan debts from discharge in bankruptcy "'was enacted to prevent indebted college or graduate students from filing for bankruptcy immediately upon graduation, thereby absolving themselves

---

1. The Chapter 13 statutory scheme provides that:

   (a) As soon as practicable after completion by the debtor of all payments under the plan, unless the court approves a written waiver of discharge executed by the debtor after the order for relief under this chapter, the court shall grant the debtor a discharge of all debts provided for by the plan or disallowed under section 502 of this title, except any debt—

   . . .

   (2) of the kind specified in paragraph (5), (8), or (9) of section 523(a) of this title. . . .

   11 U.S.C.A. § 1328(a) (West Supp.2002).

2. Section 523(a) provides that:

   (a) A discharge under section 727, 1141, 1228(a), 1228(b), or 1328(b) of this title does not discharge an individual debtor from any debt—

   . . . .

   (8) for an educational benefit overpayment or loan made, insured or guaranteed by a governmental unit, or made under any program funded in whole or in part by a governmental unit or nonprofit institution, or for an obligation to repay funds received as an educational benefit, scholarship or stipend, unless excepting such debt from discharge under this paragraph will impose an undue hardship on the debtor and the debtor's dependents. . . .

   11 U.S.C.A. § 523(a)(8) (West Supp.2002).

of the obligation to repay their student loans.'" *In re Kielisch,* 258 F.3d at 320 (quoting *Tennessee Student Assistance Corp. v. Hornsby (In re Hornsby),* 144 F.3d 433, 436–37 (6th Cir.1998)).[3]

█ In order to determine the dischargeability of student loans, the debtor must bring an adversary proceeding, *see* Fed. R. Bankr.P. 7001(6), and prove undue hardship, *see* 11 U.S.C.A. §§ 523(a)(8), 1328(a)(2). Although the bankruptcy code does not define "undue hardship," most courts have adopted a three-part test to determine whether a debtor has shown "undue hardship" within the meaning of § 523(a)(8). *See Brunner v. New York State Higher Educ. Servs. Corp.,* 831 F.2d 395, 396 (2d Cir.1987) (per curiam). Under this test, the debtor must establish (1) that he cannot maintain a minimal standard of living for himself and his dependents, based upon his current income and expenses, if he is required to repay the student loans; (2) that additional circumstances indicate that his inability to do so is likely to exist for a significant portion of the repayment period of the student loans; and (3) that he has made good faith efforts to repay the loans. *See id.* at 396.

### III.

█ We first address Appellants' contention that Ekenasi's adversary proceeding seeking a discharge of his student loan obligations as an "undue hardship" was premature. More specifically, they urge us to follow those courts that have held that student loan hardship cases are never ripe for adjudication in a Chapter 13 case until near or at the time of completion of the Chapter 13 plan. *See Pair v. United States (In re Pair),* 269 B.R. 719, 720–21 (Bankr.N.D.Ala.2001); *Soler v. United States (In re Soler),* 250 B.R. 694, 697 (Bankr.D.Minn.2000); *Raisor v. Education Loan Servicing Ctr., Inc. (In re Raisor),* 180 B.R. 163, 167 (Bankr.E.D.Tex.1995). Appellants argue that this interpretation is implicit in the language of §§ 1328 and 523(a)(8), which focuses on the debtor's circumstances at the point of discharge. Ekenasi, on the other hand, urges us to follow those cases that allow a debtor to seek a hardship determination at any time of his choosing. He contends the debtor may choose "the date of the 'snapshot' which the [c]ourt must examine for *Brunner* purposes." *Goranson v. Pennsylvania Higher Educ. Assistance Agency (In re Goranson),* 183 B.R. 52, 56 (Bankr. W.D.N.Y.1995); *see United Student Aid Funds, Inc. v. Taylor (In re Taylor),* 223 B.R. 747, 751 (B.A.P. 9th Cir.1998).

As Appellants correctly observe, the *Brunner* factors, which were developed in the context of an adversary proceeding brought to discharge student loan obligations at the conclusion of a Chapter 7 proceeding, do not transfer neatly to an adversary proceeding brought to discharge student loan obligations in the midst of the debtor's attempts to comply with a confirmed Chapter 13 plan. *Brunner* requires the debtor to establish that he "cannot maintain, *based on current income and expenses,* a 'minimal' standard of living" for himself and his dependents if he is forced to repay the student loans and that this condition will "likely ... persist for a significant portion of the repayment period of the student loans." *Brunner,* 831 F.2d at 396 (emphasis added).

---

**3.** Originally, the nondischargeability of student loans applied only to Chapter 7 bankruptcies, which had the effect of providing debtors with an incentive to file Chapter 13 plans and discharge their student loan debts at the conclusion of the plan payments without a showing of undue hardship. *See In re Kielisch* 258 F.3d at 320. Congress eliminated this incentive when it amended the statute in 1990 to extend the nondischargeability of student loans to Chapter 13 filings. *See id.*

In a Chapter 7 case, the bankruptcy proceeding is short-lived and the debtor achieves a quick discharge of his unsecured, dischargeable debts. Thus, predicting whether the debtor's current inability to maintain a minimal standard of living will persist throughout a significant portion of the repayment period is based upon a known, current situation. Where an adversary proceeding seeking a discharge of student loan obligations is brought early in a Chapter 13 case, however, the question of whether the debtor will be unable to maintain a minimal standard of living throughout a significant portion of the repayment period must be premised upon a prediction of what the debtor's situation will be at the conclusion of the Chapter 13 plan which, as here, may extend up to five years.

Having carefully considered these problems, as well as other rationales underlying the opposing viewpoints that have developed on this issue, we decline to adopt a hard and fast rule which would preclude bankruptcy courts from ever entertaining a proceeding to discharge student loan obligations until at or near the time the debtor has completed payments under a confirmed Chapter 13 plan. The text of the pertinent statutes does not prohibit such an advance determination and, although cognizant of the policy concerns expressed by Congress in its refusal to discharge such loans, we can envision exceptional circumstances where the *Brunner* factors could be predicted with sufficient certainty in advance of the conclusion of a Chapter 13 proceeding. Nevertheless, while we do not preclude debtors from seeking a discharge determination of student loan debts prior to the completion of payments under a confirmed Chapter 13 plan, our cognizance of those policy concerns also counsels us to emphasize that it will be most difficult for a debtor, who has advanced his education at the expense of government-guaranteed loans, to prove with the requisite certainty that the repayment of his student loan obligations will be an "undue burden" on him during a significant portion of the repayment period of the student loans when the debtor chooses to make that claim far in advance of the expected completion date of his plan.

### IV.

Thus, we turn to the bankruptcy court's application of the *Brunner* factors to Ekenasi's claim that repayment of his student loan obligations will constitute an undue burden upon him. For the reasons which follow, we conclude that the bankruptcy court clearly erred in finding that Ekenasi met his burden of establishing the *Brunner* factors and, therefore, erred in discharging the student loan obligations based upon the record before it.

### A.

■ With the assistance of government-sponsored student loans, Ekenasi successfully achieved a postgraduate law degree in the ordinary three-year period, passed his state's bar examination, and received a state license to practice law in 1997. Ekenasi filed his Chapter 13 petition and proposed Chapter 13 Plan in August of that same year. According to Ekenasi's representations in that proceeding, he had an annual income of $22,000 per year, a net monthly income of $1,480 and, after payment of his expenses in the amount of $1,180 (*including* a $253 per month student loan payment), $300 in disposable income available to pay his *other* unsecured creditors. Although entitled to an automatic stay of his student loan obligation, *see* 11 U.S.C.A. § 362(a) (West 1993 & Supp.2002), Ekenasi proposed a plan that excepted his student loan creditors from any portion of the $300 payment by proposing to pay the $253 student loan payment directly to those creditors. He also

obtained an extended 60–month payment period "for cause" by pointing to that same obligation. He obtained confirmation of the Plan in February 1998.

A mere three months later, in May 1998, Ekenasi filed this adversary proceeding, seeking a complete discharge of the student loan debt and, thereby, the $253 monthly payment. Also in 1998, Ekenasi secured employment as an attorney, an opportunity afforded by the very loans he now seeks to discharge. His annual income rose to $36,000 per year and, by the time of the trial in December 2000, had increased again to $42,000—nearly double the income upon which the Plan was originally based. Ekenasi's net monthly income had increased from $1,480 to approximately $2,800. But, after eliminating any payment for student loans, Ekenasi claimed that his expenses had risen from $1,480 (a figure which included the bankruptcy payment) to $3,831. Ekenasi had apparently not been making the $253 monthly student loan payment, but testified at trial in December 2000 that he was current on his $300 monthly bankruptcy payments to the trustee in his Chapter 13 case.

Presented with this evidence, we are satisfied that the bankruptcy court clearly erred in finding that Ekenasi had sufficiently proven that he would be unable, two years in the future, to maintain a minimal standard of living for himself and his dependents for a significant portion of the repayment period of the student loan.

■ The evidence of Ekenasi's projected income and expenses is simply too speculative to substantiate the findings made by the bankruptcy court on this issue. For example, at the time of the adversary proceeding, Ekenasi claimed responsibility to pay $900 a month pursuant to a Nigerian court support order for his three children living in that country. However, he testified during the adversary proceeding that he was not fulfilling that obligation.[4] Ekenasi also claimed that all nine children were dependent upon him for support, and that he received no financial assistance from their mothers, yet he testified that he claimed only two dependents on his 1997 federal tax return, three dependents on his 1998 tax return, and three dependents on his 1999 tax return.

The speculative nature of the bankruptcy court's findings at the time are also highlighted by the circumstances that now exist, if we presume that Ekenasi has remained current in his Chapter 13 Plan payments since the adversary proceeding. Ekenasi will have completed his obligations under the Plan to his general unsecured creditors and will be eligible for a

4. Appellants alternatively contend that Ekenasi has no legal obligation to pay child support pursuant to the Nigerian court order because there was no evidence that the Nigerian support order was entered in West Virginia to entitle it to full faith and credit. We need not decide this issue. However, we do take note of its problematic nature. Ekenasi sought to rely, at least in part, upon the Nigerian support obligation as an expense which should be considered in determining whether he should obtain a discharge of his government-sponsored student loan debt. Ekenasi, however, did not include this expense in his Chapter 13 Plan. He also admitted at the adversary proceeding that he was not complying with the order and, to the extent he sent money for the support of his children in Nigeria, he did so through other family members and not pursuant to the order. If Ekenasi has a legally enforceable obligation in this country to pay the obligation in Nigeria—a fact that is far from clear in the record—then it would fairly be considered an expense to be weighed in the "undue hardship" analysis. However, it would be inappropriate for the bankruptcy court to consider a purported obligation to pay a foreign support order which is not legally enforceable and which is not being fulfilled in order to relieve Ekenasi of a legally enforceable obligation to pay student loan debts guaranteed by the federal government.

discharge of those debts in their entirety. Three of his six children living in this country have reached majority-age status, leaving only three minority-age children (ages 9, 11, and 15) in this country currently dependent, or partially dependent, upon Ekenasi for support. We can presume that his oldest child living in Nigeria is also 18 years old; the other two are 11 and 9 years of age.

Finally, we note Appellants' argument that Ekenasi's situation in many ways represents the very abuses that Congress sought to prevent in prohibiting the discharge of student loan obligations. These abuses are particularly apparent where, as here, the student loan obligations have actually resulted in an educational opportunity that has likely enhanced the student's monthly earning potential to a level that exceeds the monthly obligation associated with the very education that created that potential.

### B.

We also conclude that Ekenasi failed to prove that he "has made good faith efforts to repay the loans," *Brunner*, 831 F.2d at 396, and that the bankruptcy court clearly erred in finding otherwise. Of particular note, Ekenasi obtained approval of the Chapter 13 Plan to pay $300 in disposable income to unsecured creditors other than student loan creditors based upon his election to pay $253 to the student loan creditors outside the Plan. Although he presented evidence of his good faith attempts to pay the student loan payments *prior to* filing his Chapter 13 petition and Plan, he has not presented such evidence of a good faith attempt to make the student loan payments he included in the confirmed Chapter 13 Plan. Instead, Ekenasi filed the adversary proceeding to discharge the student loan debt in its entirety within a mere three months of obtaining that confirmation. *Cf. Brunner v. New York State Higher Educ. Servs.*

*Corp. (In re Brunner)*, 46 B.R. 752, 758 (S.D.N.Y.1985) (finding that debtor failed to establish good faith in a Chapter 7 proceeding where she "filed for discharge within a month of the date the first payment of her loans came due ... [,] made virtually no attempt to repay, [and never] requested a deferment of payment").

### C.

To conclude, although we decline to hold that Chapter 13 precludes a bankruptcy court from ever entertaining an adversary proceeding to discharge student loan debts until at or near the time that the debtor completes payments under a confirmed Chapter 13 plan, we are satisfied that the bankruptcy court clearly erred in finding that Ekenasi had established undue hardship under *Brunner* upon the record before it. After emigrating to this country, Ekenasi sought and obtained a post-graduate, specialized education made possible by government-sponsored student loans. As a result of his education, he made a successful career transition from taxi driver to state-employed attorney. His financial circumstances are serious, especially given his paternal obligations. However, it does not appear that they are more serious or dire than they were before he entered law school. Although the record on this point is not as developed as it should be, we must assume that Ekenasi is earning a higher monthly income as a state-employed attorney than he was earning as a taxi driver and, therefore, that he is not in a financially worse position than he was when he entered law school, even excepting the scheduled student loan payment. In other words, the financial benefit of his higher education may well be more than sufficient to cover the financial obligation associated with it. This is not to say that he may not obtain a partial or total discharge of those debts, but it was indeed premature under these circumstances for

the bankruptcy court to find that Ekenasi would not be able to repay at least a portion of the loan that had helped improve his earning potential. If we do not demand at least a fair inquiry into this question, we risk encouraging those in difficult financial situations to utilize government-sponsored student loans to achieve higher income without any concomitant accountability to repay that which enabled that achievement.

## V.

For the foregoing reasons, we reverse the district court's decision affirming the bankruptcy's discharge of Ekenasi's student loan debt owed to Appellants.

*REVERSED*