**In the Matter of Paul F. BENDER and Lee E.J. Bender, Debtors.**

**Lee E.J. Bender, Plaintiff,**

**v.**

**Educational Credit Management Corporation, Defendant.**

Civ. No. 4:02CV3298.

Bankruptcy No. 01–40345.

Adversary No. 01-4028.

United States District Court, D. Nebraska.

May 5, 2003.

Patricia M. Dugan, Omaha, NE, U.S. Trustee.

Kathleen A. Laughlin, Omaha, NE, trustee.

Richard B. Register, Fremont, NE, for plaintiff.

Gary L. Young, Keating, O'Gara Law Firm, Lincoln, NE, for defendant.

## MEMORANDUM AND ORDER

KOPF, Chief Judge.

This matter is on appeal from an order that was entered by the bankruptcy court on September 13, 2002 (bankruptcy court filing 43),[1] discharging three student loans of one of the debtors, Lee Bender. I conclude that the order should be reversed, and that the appellee's complaint should be dismissed without prejudice, for the reason that any determination of dischargeability of these debts is premature.[2]

### I. Background

Lee Bender and her husband, Paul, filed for bankruptcy under Chapter 13 in February 2001. In connection therewith, in June 2001, she initiated an adversary proceeding against the United States Department of Education and UNIPAC Service Corporation to obtain a discharge from indebtedness on three student loans that she took out between September 1984 and February 1987. The appellant, Educational Credit Management Corporation (ECMC), was later substituted for UNIPAC as the real party in interest, and the Department of Education was dismissed from the action. As of September 13, 2002, the date of the bankruptcy court's hearing in the adversary proceeding, the total amount of unpaid principal and accrued interest on the three loans was

1. The Honorable Timothy J. Mahoney, Chief Judge of the United States Bankruptcy Court for the District of Nebraska.

2. After examining the briefs and record, I find that oral argument is not needed because the facts and legal arguments are adequately presented in the briefs and record and the decisional process would not be significantly aided by oral argument. *See* Bankruptcy Rule 8012. In a memorandum and order entered on April 8, 2003 (filing 9), I *sua sponte* raised the issue of ripeness, advised the parties of my tentative conclusion that the dischargeability determination should not have been made by the bankruptcy court, and invited them to submit supplemental briefs on this and other issues. They have now done so (filings 10, 11). The appellant agrees that the matter was not ripe for decision, while appellee maintains that the bankruptcy court's order should be affirmed.

$11,176.11; ECMC has agreed that the loans can be repaid in monthly installments of $106.80 over a term of 15 years.[3] (Exhibit 1.)

Lee Bender is 53 years old, is unemployed, and, for a variety of reasons, has no reasonable prospect of employment.[4] She testified that she earns approximately $200 (net) per month buying items at garage sales and reselling them through eBay on the internet.

■ Paul Bender is 45 years old and is employed as a truck driver.[5] At the time of filing for bankruptcy, he reportedly was being paid gross wages of $2,600 per month, and was taking home $2,054. (Exhibit 6.) During the first ten months of 2001, he grossed $30,299.15, and his average monthly take home pay was $2,238. (Exhibits 5, 8.) He subsequently missed four to five weeks of work because of two surgeries, and these absences caused his income to decrease temporarily. There is no evidence that his earning capacity has been permanently impaired as the result

the physical conditions which required surgery (torn cartilage resulting from work-related knee injury and ear infection associated with reconstructive surgery performed 12 years earlier). Lee Bender, who manages the household finances, testified that her husband brings home a "base" amount of $1,600 per month, but also stated that his weekly check varies between "three hundred and something" to "right around $600." (Tr. 55–56.) She stated that his most recent paycheck was $602, and that in other weeks recently he had received $357, $545, $487, and $397 "give or take." (Tr. 58.)

In responding to interrogatories in November 2001, Lee Bender itemized the couple's monthly expenses, which totaled $2,264. (Exhibits 5, 11.) She testified at the hearing that their grocery bills had increased by between $200 to $400 per month since February 2002, when they started providing regular day care for her three grandchildren.[6] (Tr. 43, 76–77.) She also testified that a listed expense of

---

3. As also discussed in my previous memorandum and order, it is questionable whether the student loan debt can be restructured in this manner. *See, e.g., Hawkins v. Buena Vista College (In re Hawkins)*, 187 B.R. 294, 300–01 (Bankr.N.D.Iowa 1995) (court did not have authority under either 11 U.S.C. § 523(a)(8) or 11 U.S.C. § 105 to order a revised schedule of student loan payments); *Brown v. Union Financial Services, Inc. (In re Brown)*, 249 B.R. 525, 530–31 (Bankr.W.D.Mo.2000) (same). I make no determination of this issue, however.

4. ECMC does not argue that Ms. Bender should seek employment outside of the home, or that she has failed to maximize her income.

5. Although Ms. Bender argues that the student loan debt is solely her obligation, the overwhelming weight of legal authority supports the view that her husband's income must be included when considering her financial resources for purposes of Section

523(a)(8). *See White v. United States Dept. of Education (In re White)*, 243 B.R. 498, 509 & n. 9 (Bankr.N.D.Ala.1999) (collecting cases). *See also In re Sweeney*, No. 8:02CV238, slip opinion (D.Neb. Dec. 12, 2002) (Shanahan, J.) (finding no contrary authority).

6. Lee Bender has a 29–year–old daughter from a previous marriage. The daughter is separated from her husband and now resides in Lincoln, Nebraska, where she attends school. Her husband and their three children continue to live in David City, Nebraska, where the Benders reside. Lee Bender watches her grandchildren while their father is at work and they are not in school. She testified that she spends between $100 and $150 per week on groceries when caring for the grandchildren, as opposed to the listed amount of $50 per week ($200 per month) for her and her husband. While ECMC construes her testimony to indicate that it costs an additional $600 per month to feed the grandchildren, I do not have this understanding.

$100 per month for cigarettes was $60 less than the couple's actual expenditure. (Tr. 53.)

ECMC argues that the cost of caring for non-custodial grandchildren and also the cost of smoking should be excluded when calculating "the debtor's and her dependent's reasonable necessary living expenses." ECMC also argues that the Benders' monthly housing costs are excessive, and it points to testimony by Lee Bender that it might be possible for the couple to rent a smaller house or an apartment for between $450 and $700 per month, were it not for their need for additional bedrooms for her grandchildren. (Tr. 46, 79–81.) Thus, ECMC pegs the reasonable monthly expenses at $1,953 ($2,264 minus $100 for cigarettes and $371 adjustment for housing expense).[7] Subtracting this figure from a combined monthly income of $2,438 ($2,238 for Paul Bender's take home pay during first ten months of 2001, plus $200 for Lee Bender's internet auction sales), ECMC calculates that there should be a monthly surplus of $485,[8] which would easily accommodate a monthly student loan payment of $106.80.

The Benders have incurred additional debts since filing for bankruptcy. At the time of the hearing, they owed over $1,700 in past-due property taxes and had been unable to make full house payments for the past three months, resulting in an arrearage of around $1,800. (Tr. 35–36.) They had approximately $1,000 in recent medical bills. (Tr. 50.) They also had fallen behind in making utility payments. (Tr. 91.) Judge Mahoney specifically relied on this evidence to find that regardless of what is shown on the schedules for average monthly expenses, the Benders "are not making it," from which he concluded that "[i]t would be an undue hardship to force them to come up with $106 a month now or in the future." (Tr. 104, 107.)

## II. Discussion

■ The Bankruptcy Code exempts certain educational debt from discharge unless it is shown that the exemption "will impose undue hardship on the debtor and the debtor's dependents." 11 U.S.C. § 523(a). In order to discharge student loan debt, the debtor must initiate a separate action to prove undue hardship. *In re Rose,* 187 F.3d 926, 929 (8th Cir.1999). The debtor has the burden of proving undue hardship by a preponderance of the evidence. *Long v. Educational Credit Management Corp. (In re Long),* 271 B.R. 322, 328 (8th Cir. BAP 2002), *rev'd on other grounds,* 322 F.3d 549 (8th Cir.2003).

■ The bankruptcy court's conclusion that appellee's student loans impose an "undue hardship" is a legal question to be reviewed de novo. *In re Long,* 322 F.3d at 553 (rejecting clearly erroneous review standard applied by the Eighth Circuit Bankruptcy Appellate Panel). Whether the dischargeability issue is ripe for decision is, of course, also a legal question, and one which may be raised *sua sponte* at any stage of the proceedings. *See Berg-*

---

**7.** The Benders purchased a three-bedroom house in David City for $90,000, with no down payment. Their monthly mortgage payment is $629, their pro-rated property taxes are $142 per month, and they spend an estimated $50 per month for home repairs and maintenance, for a total of $821. ECMC contends that a $450 rental property would satisfy the couple's housing requirements, for a net savings of $371 per month.

**8.** The Benders' Chapter 13 plan requires them to pay $140 per month for a period of 4 years. (Tr. 67.) Although BCMC argues that the monthly surplus would increase to $625 after the Chapter 13 plan payments end, such payments are not included in the Benders' schedule of monthly expenses.

*strom v. Bergstrom,* 623 F.2d 517, 519 n. 1 (8th Cir.1980). *See also Vogel v. Foth and Van Dyke Associates, Inc.,* 266 F.3d 838, 840 (8th Cir.2001) (the question of ripeness touches a court's jurisdictional powers).

■ The Eighth Circuit has embraced a "totality-of-the-circumstances" approach to the "undue hardship" inquiry. *In re Long,* 322 F.3d at 554 (reaffirming test first set forth in *Andrews v. South Dakota Student Loan Assistance Corp. (In re Andrews),* 661 F.2d 702, 704 (8th Cir.1981), while expressly rejecting more restrictive test articulated in *Brunner v. New York State Higher Educ. Serv. Corp.,* 831 F.2d 395, 396 (2nd Cir.1987)).[9] Thus, in evaluating the totality-of-the-circumstances on review in this case, I am instructed by the Court of Appeals to consider: "(1) the debtor's past, present, and reasonably reliable future financial resources; (2) a calculation of the debtor's and her dependent's reasonable necessary living expenses; and (3) any other relevant facts and circumstances surrounding each particular bankruptcy case." *Id.* (citing *Andrews,* 661 F.2d at 704; *Andresen v. Nebraska Student Loan Program, Inc. (In re Andresen),* 232 B.R. 127, 132 (8th Cir. BAP 1999)).[10]

■ "Simply put, if the debtor's reasonable future financial resources will suffi-

ciently cover payment of the student loan debt—while still allowing for a minimal standard of living—then the debt should not be discharged. Certainly, this determination will require a special consideration of the debtor's present employment and financial situation—including assets, expenses, and earnings—along with the prospect of future changes—positive or adverse—in the debtor's financial position." *Id.* at 554–55 (citing *In re Andresen,* 232 B.R. at 141).

■ Although Judge Mahoney concluded that "[i]t would be an undue hardship to force [the Benders] to come up with $106 a month now or in the future," it should be recognized that the Benders cannot be forced to make any payments to ECMC at the present time. During the pendency of their bankruptcy, ECMC is prohibited from taking any action to collect on the student loan debts, *see* 11 U.S.C. § 362(a) (providing automatic stay), and it is limited to receiving pro-rata payments along with other unsecured creditors under the Chapter 13 plan, *see Groves v. LaBarge (In re Groves),* 39 F.3d 212, 215 (8th Cir.1994) (separate classification of student loan debt in Chapter 13 plan unfairly discriminated against other creditors).

---

9. "The *Brunner* test requires the debtor to make a three-part showing in order to prove undue hardship: (1) that the debtor cannot maintain, based on current income and expenses, a 'minimal standard' of living for herself and her dependents if forced to repay the loans; (2) that additional circumstances exist indicating that this state of affairs is likely to persist for a significant portion of the repayment period of the student loans; and (3) that the debtor has made good faith efforts to repay the loans. *Brunner,* 831 F.2d at 396. However, under a *Brunner* analysis, if the bankruptcy court finds against the debtor on any of the three prongs of the test, the inquiry ends and the student loan is not dischargeable." *Id. In re Long,* 322 F.3d at 554.

10. The Eighth Circuit BAP has also held that each loan must be considered separately when applying § 523(a)(8). *In re Andresen,* 232 B.R. at 137. The record in this case shows that the first loan was executed on August 5, 1984, in the principal amount of $2,352.00, and as of July 2, 2001, had an unpaid balance of $3,597.43; the second loan was executed on January 2, 1986, in the principal amount of $2,424.00, and as of July 2, 2001, had an unpaid balance of $3,707.53; and the third loan was executed on January 15, 1987, in the principal amount of $1,902.00, and as of July 2, 2001, had an unpaid balance of $2,909.23. (Exhibit 1 & Joint Preliminary Pretrial Statement, bankruptcy court filing 25).

■ As a matter of law, therefore, the question of dischargeability under § 523(a)(8) should not hinge upon the Benders' current financial condition, but, rather, should be dependent upon their ability to pay off the loans after emerging from bankruptcy protection. Also, even though Judge Mahoney's order states that "[t]he student loans are discharged" (bankruptcy court filing 43), a debt generally is not discharged under Chapter 13 until the debtor completes payments under the plan. *See* 11 U.S.C. § 1328(a).[11] While a complaint to determine the dischargeability of a debt "may be filed at any time," *see* Bankruptcy Rule 4007(b), it does not necessarily follow that a determination under § 523(a)(8) can be made at any time during the pendency of a Chapter 13 case. In fact, a number of courts have held that such a determination is premature until at or about the time that a discharge of the student loan debt can be ordered under § 1328(a). *See, e.g., Pair v. U.S. Dept. of Education (In re Pair)*, 269 B.R. 719, 721 (Bankr.N.D.Ala. 2001) (dismissing complaint without prejudice to refiling within six months of plan completion date); *Soler v. United States (In re Soler)*, 250 B.R. 694, 695–97 (Bankr.D.Minn.2000) (relief sought was too remote and speculative); *Raisor v. Education Loan Servicing Center, Inc. (In re Raisor)*, 180 B.R. 163, 166 (Bankr. E.D.Tex.1995) (not ripe for decision until after Chapter 13 plan has been successfully completed). *Cf. Ekenasi v. Education Resources Institute (In re Ekenasi)*, 325 F.3d 541, 547–48 (4th Cir.2003) (declining to adopt "a hard and fast rule which would preclude bankruptcy courts from ever entertaining a proceeding to discharge student loan obligations until at or near the time the debtor has completed payments under a confirmed Chapter 13 plan," but emphasizing that "it will be most difficult for a debtor, who has advanced his education at the expense of government-guaranteed loans, to prove with the requisite certainty that the repayment of his student loan obligations will be an 'undue hardship' on him during a significant portion of the repayment period of the student loans when the debtor chooses to make that claim far in advance of the expected completion date of his plan."). *But see Goranson v. Pennsylvania Higher Education Assistance Agency (In re Goranson)*, 183 B.R. 52, 53 n. 1 (Bankr.W.D.N.Y.1995) (disagreeing with decision in *In re Raisor*); *United Student Aid Funds, Inc. v. Taylor (In re Taylor)*, 223 B.R. 747, 750–51 (9th Cir. BAP 1998) (issue of dischargeability of Chapter 13 debtors' student loan debt was ripe for adjudication before completion of plan payments).

■ "The ripeness doctrine is invoked to determine whether a dispute has yet matured to a point that warrants decision. The determination is rested both on Article III concepts and on discretionary reasons of policy. There are two factors relevant to a ripeness decision: the fitness of the issue for judicial resolution and the hardship to the parties of withholding court consideration." *Automotive, Petroleum & Allied Industries Employees Union, Local 618 v. Gelco Corp.*, 758 F.2d 1272, 1275 (8th Cir.1985) (citations omitted). The first factor of "fitness for judicial resolution" generally "safeguards against judicial review of hypothetical or speculative disagreements." *Nebraska Public Power Dist. v. MidAmerican Energy Co.*, 234 F.3d 1032, 1038 (8th Cir.2000).

---

**11.** Section 1328(a) provides, in part: "As soon as practicable after completion by the debtor of all payments under the plan, ... the court shall grant the debtor a discharge of all debts provided for by the plan or disallowed under section 502 of this title, except any debt ... (2) of the kind specified in paragraph (5), (8), or (9) of section 523 of this title; ...."

The second factor of "hardship to the parties" involves a determination that delayed review will result in significant harm, with "harm" including both the traditional concept of damages and also the heightened uncertainty and resulting behavior modification that may result. *See id.* Neither factor supports an immediate determination as to the dischargeability of the student loan debt this case.

"[T]he bankruptcy court's determination of undue hardship will necessarily involve a certain amount of speculation about the debtor's financial circumstances," *In re Andrews*, 661 F.2d at 705 n. 5, but a determination that is based on a record made 2 ½ years before the expected completion date of the Benders' Chapter 13 plan entails unnecessary guesswork and presupposes that the Benders will complete their payments under the plan. Also, while the appellee may have benefitted from an early determination of dischargeability by the bankruptcy court, it has not been shown that she would be harmed if a determination were not made until at or about the time that a discharge order can be entered under § 1328(a).

In summary, I conclude that the issue of "undue hardship" under § 523(a)(8) was not ripe for decision by the bankruptcy court on September 13, 2002, or at the present time on de novo appellate review. I will reverse the bankruptcy court's order and remand the matter for dismissal without prejudice.

Accordingly,

IT IS ORDERED that the bankruptcy court's order of September 13, 2002 (bankruptcy court filing 43), is reversed, and the case is remanded with directions to dismiss the appellee's complaint without prejudice.