**In re Daniel Christian HOFFER, Diane Sue Hoffer, Debtors.**

**Daniel Christian Hoffer, et al., Plaintiffs,**

**v.**

**American Education Services, et al., Defendants.**

**Bankruptcy No. 05–58626. Adversary No. 07–2280.**

United States Bankruptcy Court, S.D. Ohio, Eastern Division.

Feb. 20, 2008.

Crystal I. Zellar, Zellar & Zellar, Attorneys at Law, Inc., Zanesville, OH, for Plaintiffs.

American Education Services, Harrisburg, PA, pro se.

United States Department of Education, Washington, D.C., pro se.

Edward M. King, Frost Brown Todd LLC, Louisville, KY, for Educational Credit Management Corporation.

*ORDER ON DEFENDANT'S MOTION TO DISMISS FOR LACK OF SUBJECT MATTER JURISDICTION*

C. KATHRYN PRESTON, Bankruptcy Judge.

This adversary proceeding came on for hearing on November 30, 2007, upon the Motion to Dismiss for Lack of Subject Matter Jurisdiction (Doc # 5) filed by Educational Credit Management Corporation, assignee of Pennsylvania Higher Educational Assistance Authority [1] (hereinafter "ECMC"), Plaintiff's Memorandum Contra (Doc # 7) and ECMC's Reply (Doc # 8). ECMC seeks to dismiss this adversary proceeding on the basis that the issues are not ripe for decision.

The Court has jurisdiction over this matter pursuant to 28 U.S.C. § 1334 and the General Order of Reference entered in this District. This is a core proceeding pursuant to 28 U.S.C. § 157(b)(2)(I).

The record in the bankruptcy case reveals the following facts germane to resolution of this Motion: Diane Sue Hoffer (hereinafter, the "Debtor") and her husband (hereinafter, jointly with Ms. Hoffer, the "Debtors") filed a joint Petition for Relief under Chapter 13 of the Bankruptcy Code on May 19, 2005. Contemporaneously with the Petition for Relief, Debtors filed a proposed Chapter 13 Plan, which in due course was confirmed by the Court. See Order Confirming Chapter 13 Plan, entered September 12, 2005 (Doc # 19). According to the Chapter 13 Trustee's Recommendation (Doc # 17), 48 monthly payments are required to consummate the Plan. Pursuant to § 1326 of the Bankruptcy Code in effect at that time,[2] the Debtors

---

1. ECMC is not named Defendant in this matter, but admits that it is the real party in interest by virtue of assignment of the Debtor's student loan obligations.

2. This case was filed prior to the effective date of the Bankruptcy Abuse Prevention and Consumer Protection Act of 2005 ("BAPCPA"), and is, therefore, governed by Title 11 (the "Bankruptcy Code") as it existed pre-

began payments to the Trustee in June 2005. Thus, provided that the Debtors continue making timely payments under the Plan, the Plan should be fully consummated in June 2009, and the Debtors will presumably receive their discharge shortly thereafter. On June 25, 2007, the Debtors filed a Complaint seeking to discharge Debtor Diane Hoffer's student loan debt pursuant to § 523(a)(8), on the basis that the obligation imposes an undue hardship on her and her family.

ECMC's argument is fairly simple: The determination of dischargeability of the Debtor's student loans is an issue not ripe for adjudication until the Debtor obtains her discharge or discharge is imminent; if the discharge is not imminent, there is no case or controversy relating to discharge and the Court could only render an advisory opinion, which it is precluded from doing. Thus, this Court is without subject matter jurisdiction, and the Complaint must be dismissed. ECMC relies heavily on the Eighth Circuit Court of Appeals' decision of *Bender v. Educational Credit Management Corporation (In re Bender)*, 368 F.3d 846 (8th Cir.2004). The Debtor counters that the Debtors have performed as required by their Plan and they are on track to earn their discharge around June 2009, when this adversary would be concluded if it proceeds in the normal course; therefore, they assert, the issue is indeed ripe. There is a clear divide among the courts on the issue with ample support on both sides of the question.

Prior to the enactment of BAPCPA, § 1328(a) provided in pertinent part:

[A]s soon as practicable *after completion by the debtor of all payments under the plan,* ... the court shall grant the debt-

or a discharge of all debts provided for by the plan ..., except any debt—

. . .

(2) of the kind specified in paragraph (5), (8) or (9) of section 523(a) of this title....

11 U.S.C. § 1328(a) (2004) (amended 2005) (emphasis supplied).

The pre-BAPCPA version of § 523(a)(8) excepts from the Chapter 13 discharge debt for an educational loan made, insured or guaranteed by a governmental unit, or made under a program funded in whole or part by a governmental unit, unless excepting such debt from discharge will impose an undue hardship on the debtor and the debtor's dependents. The quest for determination of dischargeability of such a debt must be posited before the court by way of an adversary proceeding. Fed. R. Bankr.P. 7001. While Fed. R. Bankr.P. 4007(c) specifies a deadline for filing of complaints to determine dischargeability of debts specified by § 523(c), Rule 4007(b) states that a complaint to determine dischargeability of other debts (including educational loan debts described in § 523(a)(8)) may be filed at any time. Neither the Bankruptcy Code or Rules attempt to establish a date at which such a cause of action would accrue or mature.

Similar to the instant case, in *Bender*, the Debtor sought a determination of dischargeability of student loans during the pendency of a Chapter 13 case. Prior to reaching the Eighth Circuit Court of Appeals, the District Court of Nebraska decided that the *Bender* case was brought prematurely. The District Court discussed the concept of ripeness thus:

BAPCPA, including the provisions of §§ 1326 and 523(a)(8) as it existed at that time. Unless otherwise indicated, all references to the

Bankruptcy Code herein shall refer to the Bankruptcy Code in effect in May 2005.

"The ripeness doctrine is invoked to determine whether a dispute has yet matured to a point that warrants decision. The determination is rested both on Article III concepts and on discretionary reasons of policy. There are two factors relevant to a ripeness decision: the fitness of the issue for judicial resolution and the hardship to the parties of withholding court consideration." *Automotive, Petroleum & Allied Industries Employees Union, Local 618 v. Gelco Corp.,* 758 F.2d 1272, 1275 (8th Cir.1985) (citations omitted). The first factor of "fitness for judicial resolution" generally "safeguards against judicial review of hypothetical or speculative disagreements." *Nebraska Public Power Dist. v. MidAmerican Energy Co.,* 234 F.3d 1032, 1038 (8th Cir.2000). The second factor of "hardship to the parties" involves a determination that delayed review will result in significant harm, with "harm" including both the traditional concept of damages and also the heightened uncertainty and resulting behavior modification that may result. *See id. Bender v. Educ. Credit Mgmt. Corp. (In re Bender),* 297 B.R. 126, 132–133 (D.Neb. 2003), *aff'd,* 368 F.3d 846 (8th Cir.2004). In *Bender,* the debtor had instituted her action to determine dischargeability over three years prior to the date of her anticipated discharge. Following the Nebraska Court's lead, the Eighth Circuit held that the debtor had sought the Bankruptcy Court's decision too long prior to discharge inasmuch as the Bankruptcy Court's determination must be based on the debtor's circumstances at that point in time.

However, in *Ekenasi v. Education Resources Institute (In re Ekenasi),* 325 F.3d 541 (4th Cir.2003), the Fourth Circuit Court of Appeals declined to adopt the rule espoused by the Eighth Circuit. While recognizing that the discharge date is the relevant point in time for consideration of the factors pertinent to the question of dischargeability, the Fourth Circuit also recognized that the applicable statutes do not prohibit early determination of the issues and there can be circumstances where the pertinent factors can be predicted with sufficient certainty prior to conclusion of the chapter 13 plan.

 The Sixth Circuit Court of Appeals has also discussed ripeness, observing that:

The Supreme Court has stated that the basic rationale of the ripeness doctrine "is to prevent the courts, through premature adjudication, from entangling themselves in abstract disagreements." Ripeness becomes an issue when a case is anchored in future events that may not occur as anticipated, or at all. Ripeness is, thus, a question of timing. A case is ripe for pre-enforcement review under the Declaratory Judgment Act only if the probability of the future event occurring is substantial and of "sufficient immediacy and reality to warrant the issuance of a declaratory judgment."

*Nat'l Rifle Ass'n of Am. v. Magaw,* 132 F.3d 272, 284 (6th Cir.1997) (citations omitted). In that case, the Sixth Circuit stated that several factors must be weighed in deciding whether to address issues presented for review:

We must address the hardship to the parties if judicial relief is denied at the pre-enforcement stage in the proceedings. [*United Steelworkers, Local 2116 v. Cyclops Corp.,* 860 F.2d 189, 195 (6th Cir.1988).] We must examine the "likelihood that the harm alleged by plaintiffs will ever come to pass." *Id.* at 194. And we must consider whether the case is fit for judicial resolution at the pre-enforcement stage, which requires a determination of whether the factual record is

sufficiently developed to produce a fair adjudication of the merits of the parties' respective claims. *Id.* at 195. *See also Brown v. Ferro Corp.,* 763 F.2d 798, 801 (6th Cir.[1985] ) ("ripeness doctrine ... requires that the court exercise its discretion to determine if judicial resolution would be desirable under all of the circumstances"), *cert. denied,* 474 U.S. 947, 106 S.Ct. 344, 88 L.Ed.2d 291 (1985). As the Supreme Court has stated, the prudential considerations that weigh in the ripeness calculus are the need to "flesh out" the controversy and the burden on the plaintiff who must "adjust his conduct immediately." *Lujan,* 497 U.S. 871 at 891, 110 S.Ct. 3177, 111 L.Ed.2d 695 [(1990)].

*Nat'l Rifle Ass'n,* 132 F.3d at 284.

Applying these factors to the instant case, this Court is compelled to conclude that the issues presented for review are ripe for resolution. ECMC will suffer no hardship if this Court declines to exercise jurisdiction, but the Debtor indeed could. An early determination of the dischargeability of the debt to ECMC will allow the Debtor to pay through the Chapter 13 Plan all or a portion of the debt if and to the extent it is deemed non-dischargeable. Moreover, the Debtor could also pay through the Plan the attorney fees and costs incurred in connection with the adversary proceeding, allowing the family greater stability and ease in managing their finances.[3] Courts have long recognized that the general underlying policy of the bankruptcy law is to provide those seeking relief a "fresh start." *See Grogan v. Garner,* 498 U.S. 279, 286, 111 S.Ct. 654, 112 L.Ed.2d 755 (1991) (citation omitted). Additionally, one of the purposes of Chapter 13 is to allow debtors to adjust their financial circumstances by paying pre-petition debt consistent with their available resources. *Metro Employees Credit Union v. Okoreeh–Baah (In re Okoreeh–Baah),* 836 F.2d 1030, 1033 (6th Cir.1988). If debtors are compelled to await discharge before obtaining a determination of dischargeability, they are deprived of that opportunity or the other options that are available to them in light of the outcome of the adversary proceeding. Furthermore, if they must wait until discharge is imminent before pursuing this Court's determination, they could lose the protection of the automatic stay if discharge is entered and the automatic stay expires while they await trial and the Court's decision.

Finally, to require a debtor to await instituting a dischargeability action until discharge or a few months prior to discharge would delay closing of the case, to a debtor's detriment. It will require at least six to eight months to bring an adversary proceeding to trial; it may require another few months for the court to render a decision. It is not uncommon for completion of an adversary proceeding to take a year. Debtors unanimously complain that a pending bankruptcy case presents an almost insurmountable hurdle to going on with their lives; they are usually unable to rent an apartment, obtain a loan, re-establish their credit, obtain new utility services and the like while their bankruptcy case is open. This results in hardship for many of them and reinforces the need for swift and efficient administration and closing of the case.

█ For the foregoing reasons, judicial resolution of the issues is highly desirable

---

3. ECMC suggests that allowing the Debtor to pay through the Plan these attorney fees and costs will result in a lower dividend to unsecured creditors. This is not true. In this District, chapter 13 plans are dividend specific not time specific; the Debtors' confirmed Plan provides for a dividend of 3% to unsecured creditors, and the Plan will not be completed until that dividend is paid.

in order to fully effectuate the relief available through Chapter 13 of the Bankruptcy Code and assure prompt administration and closing of this case. For these reasons alone, the determination of dischargeability of educational loans in Chapter 13 should be available to a party in interest at any stage of a chapter 13 case.

In the Chapter 13 bankruptcy arena, the second factor articulated by the Sixth Circuit of the "likelihood that the harm alleged by plaintiffs will ever come to pass" translates into whether the key event (i.e., discharge) will ever occur. It cannot be disputed that a significant percentage of Chapter 13 cases fail, without the debtor obtaining a discharge. However, it is a pre-requisite to confirmation that the court find the proposed chapter 13 plan feasible and the debtor able to comply with the plan. 11 U.S.C. § 1325(a)(6) (2005). Therefore, at the time of confirmation, the court has been relatively assured of the success of the Chapter 13 case. The fact that future events or circumstances may derail a debtor's efforts does not make the dischargeability issues less ripe. If that were the standard, the issues surrounding many of the debtor's remedies in the bankruptcy environment would fail to ripen sufficiently for adjudication, thereby severely impeding efficient and timely administration, or even success, of bankruptcy cases. For example: valuation of assets with concomitant bifurcation of claims into secured and unsecured components and avoidance of liens are issues that are determined in the context of the plan, but the effect of orders of the court on such issues are subject to successful conclusion of the plan and issuance of the discharge. *See e.g.,* 11 U.S.C. §§ 349, 1325(a)(5)(B)(i)(I)(post-BAPCPA).

Even if ripeness is an appropriate concern at early stages of a Chapter 13 case, the instant case is not in its early stages. The Debtors have completed more than one-half of the payments required under the plan, their performance is perfect and they are on track for receiving their discharge in approximately 16 months. That they will receive their discharge is highly likely, and there is no benefit to be gained from delaying determination of the issues at hand.

The final factor articulated by the Sixth Circuit is whether the case is fit for judicial resolution, "which requires a determination of whether the factual record is sufficiently developed to produce a fair adjudication of the merits of the parties' respective claims." *Nat'l Rifle Ass'n,* 132 F.3d at 284 (citation omitted). ECMC urges that the prospective discharge date is so far in the future that the Debtor will only be able to speculate about her financial circumstances at that time. However, as aptly explained by Debtor's counsel, the criteria for dischargeability of student loans includes evaluation of the Debtor's financial future for the *entire repayment period,* which could last eight to ten years! Evaluating the Debtors' financial condition as of a date a year hence is no more difficult than evaluating their financial condition over the ensuing eight years. Additionally, it is inherent in many issues in bankruptcy proceedings for the court to conduct a forward-looking evaluation. A short list of such proceedings includes consideration of plans proposed under chapters 11, 12 and 13, continuation of the automatic stay under § 362, use of property of the estate under § 363, and assumption of executory contracts under § 365. Moreover, the burden is on the Debtor to present evidence of sufficient specificity for the Court to determine whether the educational loan debt should be dischargeable under the standards established by the courts.

84

In accordance with the foregoing, it is ORDERED as follows:

1. The Motion to Dismiss for Subject Matter Jurisdiction by Educational Credit Management Corp. hereby is DENIED.

2. Inasmuch as Educational Credit Management Corp. admits that it is the real party in interest in this adversary proceeding, Educational Credit Management Corp. is hereby added as a party defendant.

3. Educational Credit Management Corp. shall file an answer to the Plaintiff's Complaint within 20 days of the date of entry of this Order.

IT IS SO ORDERED.