ELECTRONIC CITATION:  2008 FED App. 0019P (6th Cir.)
File Name:  08b0019p.06

## BANKRUPTCY APPELLATE PANEL OF THE SIXTH CIRCUIT

| | |
|---|---|
| In re:   JENNIFER DENISE CASSIM,  ) | |
| ) | |
| Debtor.  ) | |
| _____  ) | |
| ) | |
| JENNIFER DENISE CASSIM,  ) | |
| ) | |
| Plaintiff-Appellee,  ) | |
| ) | |
| v.  ) | No. 07-8080 |
| ) | |
| EDUCATIONAL CREDIT  ) | |
| MANAGEMENT CORPORATION,  ) | |
| ) | |
| Defendant-Appellant.  ) | |
| _____  ) | |

Appeal from the United States Bankruptcy Court
for the Eastern District of Kentucky, London Division.
Case No. 07-60311; Adv. Pro. No. 07-6029

Argued: August 13, 2008

Decided and Filed:  November 7, 2008

Before: PARSONS, RHODES, and SHEA-STONUM, Bankruptcy Appellate Panel Judges.

_____

### COUNSEL

**ARGUED:**  Curtis P. Zaun, EDUCATIONAL CREDIT MANAGEMENT CORPORATION, St. Paul, Minnesota, for Appellant.  Fred N. Owens, Jr., Harlan, Kentucky, for Appellee.  **ON BRIEF:** Curtis P. Zaun, A.L. Brown, EDUCATIONAL CREDIT MANAGEMENT CORPORATION, St. Paul, Minnesota, for Appellant.  Fred N. Owens, Jr., Harlan, Kentucky, for Appellee.

---

**OPINION**

---

STEVEN RHODES, Bankruptcy Appellate Panel Judge. Shortly before obtaining confirmation of her chapter 13 plan, the debtor, Jennifer Denise Cassim, filed an adversary proceeding seeking a determination that payment of her student loan would impose an undue hardship and was, therefore, dischargeable. The student loan creditor, Educational Credit Management Corporation ("ECMC"), moved to dismiss the proceeding for lack of subject matter jurisdiction, contending that the action was not constitutionally ripe until Cassim obtained a general discharge upon the completion of her plan. The bankruptcy court denied the motion, as well as the creditor's motion to reconsider. Finding no error, we affirm the orders of the bankruptcy court.

## I. ISSUE ON APPEAL

The sole issue on appeal is whether the bankruptcy court erred in holding that the determination of whether the debtor was entitled to a hardship discharge of her student loan debt was constitutionally ripe for review.

## II. JURISDICTION AND STANDARD OF REVIEW

The Bankruptcy Appellate Panel of the Sixth Circuit has jurisdiction to decide this appeal. The United States District Court for the Eastern District of Kentucky has authorized appeals to the BAP. A final order of a bankruptcy court may be appealed by right under 28 U.S.C. § 158(a)(1). For purposes of appeal, an order is final if it "'ends the litigation on the merits and leaves nothing for the court to do but execute the judgment.'" *Midland Asphalt Corp. v. United States*, 489 U.S. 794, 798, 109 S. Ct. 1494, 1497 (1989) (citations omitted). The orders denying the motion to dismiss and motion for reconsideration became final following entry of an agreed judgment resolving the adversary proceeding.

The issue of ripeness is a question of law, reviewed de novo. *Ammex, Inc. v. Cox*, 351 F.3d 697, 706 (6th Cir. 2003). "De novo review requires the Panel to review questions of law independent of the bankruptcy court's determination." *First Union Mortgage Corp. v. Eubanks (In re Eubanks)*, 219 B.R. 468, 469 (B.A.P. 6th Cir. 1998) (citation omitted).

### III. FACTS

On April 11, 2007, Cassim filed a voluntary petition for relief under chapter 13 of the Bankruptcy Code. According to her Schedule I, Cassim is disabled and her sole income is from Social Security in the amount of $675 per month. Under her chapter 13 plan, which was confirmed by the bankruptcy court on July 17, 2007, Cassim will make plan payments of $50 per month, and her bankruptcy attorney will be paid fees of $1,474. No other creditor, secured or unsecured, will be paid under the plan.[1]

On July 11, 2007, Cassim filed this adversary proceeding for a determination that her student loan debt to ECMC in the amount of $22,241.39 is dischargeable under 11 U.S.C. § 523(a)(8). On August 13, 2007, ECMC filed a motion to dismiss for lack of subject matter jurisdiction. ECMC asserted that the issue of whether Cassim is entitled to a hardship discharge of her student loans is not ripe until she successfully completes her plan payments and obtains a general discharge under 11 U.S.C. § 1328. On September 19, 2007, the bankruptcy court denied ECMC's motion to dismiss. On September 28, 2007, ECMC filed a motion for reconsideration, which was denied by the bankruptcy court on October 22, 2007.

On December 4, 2007, upon the stipulation of the parties, the bankruptcy court entered an agreed judgment finding that Cassim is entitled to a hardship discharge of her student loan obligation to ECMC when the bankruptcy court enters a discharge order in the case. The judgment preserved ECMC's right to appeal the orders denying the motion to dismiss and the motion to reconsider.

On December 10, 2007, ECMC appealed both orders. During the oral argument on this appeal, ECMC's attorney stated that ECMC had agreed to a judgment without a trial in order to have the appeal of the ripeness issue heard more expeditiously.

### IV. DISCUSSION

Pursuant to §1328 of the Bankruptcy Code, a chapter 13 debtor is entitled to a discharge of debts after completion of all plan payments. However, not all debts are automatically discharged

---

[1] Because the Appellant did not raise the issue on appeal, the Panel will not address whether a 0% plan, which pays only a debtor's attorney fees for filing the bankruptcy case, meets the good faith requirement for plan confirmation under 11 U.S.C. § 1325(a)(3).

upon completion of the plan. To receive a discharge of student loan debt, a debtor must prove that repayment of the debt would impose an undue hardship on the debtor and the debtor's dependents. 11 U.S.C. § 523(a)(8).

According to Federal Rule of Bankruptcy Procedure 4007, a complaint to determine the dischargeability of a debt, other than under § 523(c) of the Bankruptcy Code, may be filed by a debtor or a creditor at any time. Section 523(c) pertains to dischargeability actions based on § 523(a)(2), (4), and (6) and is, therefore, inapplicable to proceedings to determine the dischargeability of student loans under § 523(a)(8). Thus, nothing in the Federal Rules of Bankruptcy Procedure prohibited Cassim from filing her student loan adversary proceeding before she completed her plan. Nonetheless, ECMC contends that the issue of the dischargeability of Cassim's student loan obligation is not ripe and the bankruptcy court lacks subject matter jurisdiction, until such time as Cassim receives a discharge under § 1328.

"Ripeness is a justiciability doctrine designed 'to prevent the courts, through premature adjudication, from entangling themselves in abstract disagreements.' 'Ripeness becomes an issue when a case is anchored in future events that may not occur as anticipated, or at all.'" *Ky. Press Ass'n, Inc., v. Ky.*, 454 F.3d 505, 509 (6th Cir. 2006) (internal citations omitted). The ripeness doctrine arises "both from Article III limitations on judicial power and from prudential reasons for refusing to exercise jurisdiction." *Reno v. Catholic Soc. Servs., Inc.*, 509 U.S. 43, 57 n.18, 113 S. Ct. 2485, 2496 (1993); *Warshak v. United States*, 532 F.3d 521, 525 (6th Cir. 2008); *Brown v. City of Royal Oak, Mich.*, 202 F. App'x 62, 65 (6th Cir. 2006). Accordingly, there are two components to the ripeness doctrine: constitutional ripeness and prudential ripeness. In *Brown v. Ferro Corp.*, 763 F.2d 798 (6th Cir. 1985), the Sixth Circuit explained that "[t]he ripeness doctrine not only depends on the finding of a case and controversy and hence jurisdiction under Article III, but it also requires that the court exercise its discretion to determine if judicial resolution would be desirable under all of the circumstances." *Id.* at 801.

At the oral argument in this case, ECMC's attorney confirmed that its ripeness argument was a constitutional one, based on the contingency of Cassim's discharge rather than any contingency as to the particular facts and circumstances of her hardship claim. ECMC argues that a student loan

dischargeability claim in a chapter 13 case is *never* ripe until the debtor receives a discharge, regardless of the merit of the dischargeability claim at any point in time before then.[2]

The constitutional ripeness of a declaratory judgment action depends upon "whether the facts alleged, under all the circumstances, show that there is a substantial controversy, between parties having adverse legal interests, of sufficient immediacy and reality to warrant the issuance of a declaratory judgment." *Blakely v. United States*, 276 F.3d 853, 872 (6th Cir. 2002). *See also Cities Serv. Co. v. Dept. of Energy*, 520 F. Supp. 1132, 1139 (D. Del. 1981) ("A particular case is ripe in the constitutional sense if 'the requisite injury is in sharp enough focus and the adverseness of the parties concrete enough to permit a court to decide a real controversy and not a set of hypothetical possibilities.").

The Panel holds that the contingency of Cassim's discharge does not create a constitutional ripeness impediment to the bankruptcy court's resolution of this adversary proceeding. A "substantial controversy" arose between Cassim and ECMC when she filed for bankruptcy relief under chapter 13 seeking the discharge of her financial obligations. *Educ. Credit Mgmt. Corp. v. Coleman (In re Coleman)*, No. 06-16477, 9848 (9th Cir. Aug. 1, 2008), *vacated on other grounds*, 539 F.3d 1168 (9th Cir. 2008).[3] Moreover, the controversy is of "sufficient immediacy and reality" to warrant review prior to the entry of Cassim's discharge.

Delay of the dischargeability determination would deprive Cassim of the opportunity to pay any non-dischargeable student loan debt and attorneys fees related to the adversary proceeding

---

[2] ECMC has expressly disavowed any argument that Cassim's undue hardship claim lacks prudential ripeness and did not address the issue in its appellate brief. Accordingly, the Panel will not address any facts related to a potential prudential ripeness argument. In this regard, we note that no case law suggests that a lack of prudential ripeness alone creates a subject matter jurisdictional impediment.

[3] Due to its subsequent determination that the appeal was interlocutory, the Ninth Circuit vacated its decision in *Coleman*. However, we find that the reasoning in the decision is sound and persuasive, and accordingly we cite it in support of our conclusion. In this regard, we note that in *United States v. Smith*, 584 F.2d 759 (6th Cir. 1978), the Sixth Circuit was presented with an argument that cited a decision that had been vacated on procedural grounds. The Sixth Circuit considered the argument and rejected it on its merits rather than rejecting the argument simply because the case had been previously vacated. Therefore, we conclude that it is appropriate to cite *Coleman* for its persuasive reasoning, if not for its precedential authority.

through the chapter 13 plan as well as potential loss of the automatic stay. *See Hoffer v. Am. Educ. Servs.* (*In re Hoffer*), 383 B.R. 78, 82 (Bankr. S.D. Ohio 2008). The Bankruptcy Code's purpose is to provide a debtor with a fresh start. Requiring a debtor to wait until after completion of the plan and entry of the general discharge may well unnecessarily prolong that fresh start. *Id.*

A ruling that all undue hardship cases are not ripe at any time before the general discharge is entered contradicts the historical case-by-case approach traditionally applied by courts. *See Lujan v. Nat'l Wildlife Fed'n*, 497 U.S. 871, 894, 110 S. Ct. 3177, 3191 (1990) ("The case-by-case approach . . . is the traditional, and remains the normal, mode of operation of the courts."). In addition, such a ruling would ignore the reality that in some cases a hardship discharge determination can appropriately and accurately be made prior to the entry of the general discharge. Further, it is akin to the argument, rejected by the Sixth Circuit, that certain declaratory judgment actions are not ripe for review unless and until an injury has actually occurred. *See Cent. W. Va. Energy Co. v. Wheeling-Pittsburgh Steel Corp.*, 245 F. App'x. 415 (6th Cir. 2007).

> The ripeness doctrine, however, does not require the harm to have actually occurred. *See Pac. Gas & Elec. Co. v. State Energy Res. Conservation*, 461 U.S. 190, 201, 103 S. Ct. 1713, 75 L. Ed.2d 752 (1983) ("One does not have to await the consummation of threatened injury to obtain preventive relief."). That proposition is particularly applicable in the instant case, as Wheeling-Pitt sought a declaratory judgment, the useful purpose of which is the clarification of legal duties for the future. *AmSouth Bank v. Dale*, 386 F.3d 763, 786 (6th Cir. 2004). Indeed, at the time Wheeling-Pitt filed its complaint for declaratory relief, it was in bankruptcy, and it stated that it "could not consummate its proposed joint venture without assurance the Agreement may be assigned in connection with the joint venture, because any uncertainty as to the effect of the assignment significantly affects the value of the proposed joint venture." J.A. at 22. Accordingly, CWVEC's ripeness argument lacks merit.

*Id.* at 425-26. To require a chapter 13 debtor to wait until plan completion to obtain a declaration regarding the dischargeability of a student loan debt would similarly deny the debtor the benefit of clarification of his or her legal duties for the future.

We reject the notion raised by ECMC that because there is a chance that Cassim will not complete her plan and qualify for a general discharge, any determination of dischargeability is too speculative to warrant the issuance of a declaratory judgment. Confirmation of Cassim's plan was premised on a finding that "the debtor will be able to make all payments under the plan[.]" 11 U.S.C. § 1325(a)(6). Indeed, ECMC has never asserted any facts suggesting that Cassim will not be able to complete her plan; its concern is strictly hypothetical.

Moreover, it is noteworthy in the present case that there is no suggestion that Cassim's completion of her plan will "significantly advance our ability to deal with the legal issues presented[.]" *Duke Power Co. v. Carolina Envtl. Study Group, Inc.*, 438 U.S. 59, 82, 98 S. Ct. 2620, 2635 (1978); *see also In re Coleman*, No. 06-16477, 9849 ("[P]lan completion is a single factual contingency–not a 'series of contingencies' rendering the decision 'impermissibly speculative.'"). Indeed, plan completion is irrelevant to the elements of a student loan dischargeability claim.[4]

The Fourth and Ninth Circuits have reached the same conclusion as this Panel. As explained by the Fourth Circuit:

> [W]e decline to adopt a hard and fast rule which would preclude bankruptcy courts from ever entertaining a proceeding to discharge student loan obligations until at or near the time the debtor has completed payments under a confirmed Chapter 13 plan. The text of the pertinent statutes does not prohibit such an advance determination and, although cognizant of the policy concerns expressed by Congress in its refusal to discharge such loans, we can envision exceptional circumstances where the *Brunner* factors could be predicted with sufficient certainty in advance of the conclusion of a Chapter 13 proceeding.

*Ekenasi v. Educ. Res. Inst. (In re Ekenasi)*, 325 F.3d 541, 547 (4th Cir. 2003). The Ninth Circuit in *Coleman* likewise found no constitutional ripeness impediment to the undue hardship determination. Observing that a determination regarding hardship discharges involves contemplating factual contingencies many years into the future, the court of appeals concluded that "whether it is premature for the court to make such a determination varies depending on each debtor's situation." *In re Coleman*, No. 06-16477, 9856.

---

[4] By stipulating that Cassim's student loan debt is dischargeable due to undue hardship, ECMC agreed, at least implicitly, that the mere passage of time will not change the outcome in this case. To establish undue hardship, it must be established that:

> (1) that the debtor cannot maintain, based on current income and expenses, a "minimal" standard of living for herself and her dependents if forced to repay the loans; (2) that additional circumstances exist indicating that this state of affairs is likely to persist for a significant portion of the repayment period of the student loans; and (3) that the debtor has made good faith efforts to repay the loans.

*Barrett v. Educ. Credit Mgmt. Corp. (In re Barrett),* 487 F.3d 353, 358-59 (6th Cir. 2007) (alterations omitted) (quoting *Brunner v. New York State Higher Educ. Serv. Corp.*, 831 F.2d 395, 396 (2d Cir. 1987)). Although the record in this case does not identify the repayment period of Cassim's student loans, ECMC's consent to the entry of the agreed judgment suggests that the second element of the *Brunner* test has been met and that Cassim's undue hardship will extend into the foreseeable future.

The only contrary appellate authority is *Bender v. Educ. Credit Mgmt. Corp. (In re Bender)*, 368 F.3d 846 (8th Cir. 2004). In that case, the Eighth Circuit held that the student loan dischargeability claim was not ripe three and a half years before the general discharge would occur. The court noted that the exception for a hardship discharge must be measured considering the facts at the time of discharge and rejected the debtor's argument that her situation was "so dire, and the possibility of improvement so remote, that a court could determine whether repayment of her student loans three and a half years down the road would constitute undue hardship." *Id*. at 848. The court held that "[d]eferring a decision until the case is ripe will allow a court to make its undue hardship determination on the basis of real rather than speculative circumstances." *Id.* The court noted that "[a]s a matter of administrative convenience, of course, it makes sense to commence an adversary petition to determine undue hardship before the actual date of discharge, but such proceedings should take place relatively close to that date so that the court can make its determination in light of the debtor's actual circumstances at the relevant time." *Id.*

The Panel concludes that *Bender* provides no support for ECMC's argument in this case for two reasons. First, in *Bender*, the creditor did not argue, as ECMC does here, that the debtor's dischargeability claim lacked ripeness because the debtor might not receive a discharge, and the *Bender* court expressed no such concern. Second, the court's analysis addressed only whether it was prudent to evaluate the debtor's hardship claim more than three years before the debtor would be entitled to a discharge. Therefore, although the *Bender* court did not explicitly state whether its disposition was based on constitutional or prudential ripeness, its analysis certainly suggests that it was guided by considerations of prudential ripeness rather than constitutional ripeness. This appeal, however, involves only constitutional ripeness, not prudential ripeness.

For these reasons, the Panel agrees with the Fourth Circuit and Ninth Circuit's conclusions that there is no constitutional ripeness impediment to the bankruptcy court's determination of a chapter 13 debtor's student loan dischargeability claim before a discharge is entered.

## V. CONCLUSION

The bankruptcy court did not lack jurisdiction over the adversary proceeding. Accordingly, the bankruptcy court's orders denying the motion to dismiss and the motion for reconsideration are AFFIRMED.