*RECOMMENDED FOR FULL-TEXT PUBLICATION*
Pursuant to Sixth Circuit Rule 206
File Name: 10a0022p.06

# UNITED STATES COURT OF APPEALS

## FOR THE SIXTH CIRCUIT
_____

In re:  JENNIFER DENISE CASSIM,

*Debtor.*

_____

JENNIFER DENISE CASSIM,

*Appellee,*

*v.*

EDUCATIONAL CREDIT MANAGEMENT
CORPORATION,

*Appellant.*

No. 08-6476

On Appeal from the Bankruptcy Appellate
Panel for the Sixth Circuit.
No. 07-60311—Joseph M. Scott, Jr., Bankruptcy Judge.

Argued:  October 13, 2009

Decided and Filed:  February 4, 2010

Before:  MOORE and COOK, Circuit Judges; LUDINGTON, District Judge.[*]

_____

### COUNSEL

**ARGUED:**  A.L. Brown, EDUCATIONAL CREDIT MANAGEMENT CORPORATION, Oakdale, Minnesota, for Appellant.  Fred N. Owens, Jr., LAW OFFICES, Harlan, Kentucky, for Appellee.  **ON BRIEF:**  Curtis P. Zaun, EDUCATIONAL CREDIT MANAGEMENT CORPORATION, Saint Paul, Minnesota, Edward M. King, FROST BROWN TODD LLC, Louisville, Kentucky, for Appellant. Fred N. Owens, Jr., LAW OFFICES, Harlan, Kentucky, for Appellee.

_____

[*] The Honorable Thomas L. Ludington, United States District Judge for the Eastern District of Michigan, sitting by designation.

————————

## OPINION

————————

LUDINGTON, District Judge.   Appellee Jennifer Denise Cassim ("Cassim") filed a voluntary petition under Chapter 13 of the United States Bankruptcy Code, 11 U.S.C. §§ 1301–1330, in the United States Bankruptcy Court for the Eastern District of Kentucky.  She also commenced an adversary proceeding seeking a determination that her student loan debt owed to Appellant Educational Credit Management Corporation ("Educational Credit") is dischargeable based on "undue hardship" pursuant to 11 U.S.C. § 523(a)(8).  Educational Credit filed a motion to dismiss the adversary proceeding for lack of subject matter jurisdiction, contending that whether Cassim's student loan debt is dischargeable was not ripe for review because Cassim had yet to receive a general discharge under 11 U.S.C. § 1328.  The bankruptcy court denied Educational Credit's motion to dismiss, denied a subsequent motion for reconsideration, and entered an agreed judgment providing for discharge of Cassim's student loan debt upon the entry of a general discharge.  Educational Credit appealed to the United States Bankruptcy Appellate Panel for the Sixth Circuit, which affirmed the decision of the bankruptcy court.  This appeal followed.

I

A debtor who seeks relief under Chapter 13 commits to a debt repayment plan, completion of which entitles her to discharge of her remaining debts.  *See* 11 U.S.C. §§ 1322–1328.  A Chapter 13 repayment plan must meet numerous requirements, *see, e.g.*, *id.* § 1322, and can only be confirmed by the bankruptcy court if "the debtor will be able to make all payments under the plan and to comply with the plan."  *Id.* § 1325(a)(6).  Generally, a Chapter 13 debtor retains estate property.  *Id.* § 1306.  This is in contrast to Chapter 7 proceedings, through which a debtor is entitled to a discharge of debt as soon as her estate is liquidated and distributed.  *See id.* § 727.  In either proceeding, a stay is in effect on, inter alia, "any act to collect, assess, or recover a claim against the debtor that arose before the commencement of the case. . . ."  *Id.* § 362(a)(6).

The stay remains in effect until a discharge is granted or denied, *id.* § 362(c)(2)(C), or the case is closed or dismissed. *Id.* § 362(c)(2)(A)–(B).

On April 11, 2007, Cassim filed a voluntary Chapter 13 petition and repayment plan. J.A. 14–54. According to her Chapter 13 petition, Cassim is disabled and her sole income source is social security benefits of $675.00 per month. J.A. 35. Cassim identified no secured creditors, but a total of $63,728.20 owed to unsecured creditors, including claims totaling $1,871.58 for medical care, $200.00 for a personal loan, $33,464.62 for student loans, and $28,192.00 for credit card purchases. J.A. 27–32.

On July 17, 2007, the bankruptcy court confirmed Cassim's plan, which requires Cassim to pay fifty dollars per month to the Chapter 13 trustee to fund the plan. J.A. 51, 55. Under the plan, no funds are to be distributed to unsecured creditors, but $1,474.00 is to be distributed to Cassim's counsel. J.A. 53. It will take approximately twenty-nine months, or until at least December 2009, for Cassim to complete the plan. If Cassim completes the plan, she will be entitled to a general discharge of her debts. *See* 11 U.S.C. § 1328(a) ("[A]fter completion of all payments under the plan . . . the court shall grant the debtor a discharge . . .").

Even if Cassim does not complete the plan, she could receive a "hardship" discharge if the bankruptcy court determines that three requirements are met, including: (1) her failure to complete the plan is "due to circumstances for which the debtor should not justly be held accountable"; (2) "the value . . . of property actually distributed under the plan . . . is not less than the amount that would have been paid on such claim if the estate of the debtor had been liquidated under chapter 7 . . ."; and (3) "modification of the plan under section 1329 of this title is not practicable." 11 U.S.C. § 1328(b).

Significantly, not all debts are automatically discharged upon completion of a Chapter 13 plan. In this case, Cassim's student loan debt owed to Educational Credit is dischargeable only upon proof that repayment of the debt would impose an undue hardship on Cassim and any dependents. *See id.* § 523(a)(8). To establish undue hardship, it must be proved:

> (1) that the debtor cannot maintain, based on current income and expenses, a "minimal" standard of living for herself and her dependents if forced to repay the loans; (2) that additional circumstances exist indicating that this state of affairs is likely to persist for a significant portion of the repayment period of the student loans; and (3) that the debtor has made good faith efforts to repay the loans.

*Barrett v. Educ. Credit Mgmt. Corp. (In re Barrett)*, 487 F.3d 353, 358–59 (6th Cir. 2007) (alterations and quotations omitted).

On July 13, 2007, Cassim initiated an adversary proceeding for a determination that her student loan debt owed to Educational Credit in the amount of $22,241.39 is dischargeable under § 523(a)(8). J.A. 56–57. Pursuant to Rule 4007(a) of the Federal Rules of Bankruptcy Procedure, a debtor or creditor may file a complaint to determine the dischargeability of a debt. Such a complaint, except under certain circumstances identified by the rule, but not pertinent to this case, may be filed by a debtor or creditor at any time. Fed. R. Bankr. P. 4007(b).

On August 13, 2007, Educational Credit responded to Cassim's complaint with a motion to dismiss for lack of subject matter jurisdiction, brought pursuant to Rule 7012 of the Federal Rules of Bankruptcy Procedure. J.A. 58–64. Educational Credit contended that the issues presented in the complaint were not ripe for adjudication until, and unless, Cassim received a discharge order under § 1328. On September 19, 2007, the bankruptcy court denied Educational Credit's motion. In a one-page order, the bankruptcy court indicated that it agreed with the determination in *Strahm v. Great Lakes Higher Education Corp. (In re Strahm)*, 327 B.R. 319 (Bankr. S.D. Ohio 2005), that "a rigid time period for filing a determination of dischargeability of student loans should not be established when such time restrictions are absent from the Bankruptcy Code and Bankruptcy Rules." J.A. 65.

On September 28, 2007, Educational Credit filed a motion for reconsideration, contending that the bankruptcy court's reliance on *Strahm* was misplaced because *Strahm* did not address the issue of constitutional ripeness and only addressed a motion to dismiss for failure to state a claim. Educational Credit contended that the U.S.

Constitution places more stringent limitations on the proper timing for a determination regarding the dischargeability of student loan debt than the Bankruptcy Code and Bankruptcy Rules. On October 22, 2007, the bankruptcy court denied Educational Credit's motion for reconsideration. J.A. 73–75. The bankruptcy court explained that *Strahm* addressed ripeness concerns and rejected "any assertion that [the] court lacks subject matter jurisdiction or any decision would be a mere advisory opinion."

To expedite review of the issue by an appellate court, an agreed judgment was entered in the adversary proceeding on December 4, 2007. J.A. 76–77. The agreed judgment provided that Cassim's student loan obligations held by Educational Credit "shall be discharged upon the entry of a discharge order in this case." The agreed judgment preserved Educational Credit's right to appeal the orders denying its motions to dismiss and for reconsideration.

On December 10, 2007, Educational Credit appealed to the bankruptcy appellate panel ("B.A.P."). J.A. 78–79. In an opinion affirming the decision of the bankruptcy court, the B.A.P. noted that at oral argument, Educational Credit "confirmed that its ripeness argument was a constitutional one, based on the contingency of Cassim's discharge rather than any contingency as to the particular facts and circumstances of Cassim's hardship claim." *Cassim v. Educ. Credit Mgmt. Corp. (In re Cassim)*, 395 B.R. 907, 911 (B.A.P. 6th Cir. 2008). The B.A.P. further noted that Educational Credit argued that "a student loan dischargeability claim in a Chapter 13 case is *never* ripe until the debtor receives a discharge." *Id.* (emphasis in original). Ultimately, the B.A.P. held that "the contingency of Cassim's discharge does not create a constitutional ripeness impediment to the bankruptcy court's resolution of this adversary proceeding." *Id.*

The B.A.P. found that a " 'substantial controversy' arose between Cassim and [Educational Credit] when she filed for bankruptcy relief under [C]hapter 13 seeking the discharge of her financial obligations." *Id.* (internal citation omitted). It further found that the controversy was of " 'sufficient immediacy and reality' to warrant review prior to the entry of Cassim's discharge." *Id.* at 912. The B.A.P. rejected the argument that it was "too speculative" that Cassim would receive a general discharge because

confirmation of the plan was premised on a finding that "the debtor will be able to make all payments under the plan." *Id.* at 913 (citing 11 U.S.C. § 1325(a)(6)). The B.A.P. emphasized that requiring a debtor to wait until entry of a general discharge may "unnecessarily prolong" the "fresh start" that the Bankruptcy Code is intended to provide. *Id.* at 912. It further emphasized that a case-by-case ripeness inquiry is appropriate because "in some cases a hardship discharge determination can appropriately and accurately be made prior to the entry of the general discharge." *Id.* Finally, Educational Credit did not assert "any facts suggesting that Cassim will not be able to complete her plan." *Id.* at 913.

Educational Credit filed a notice of appeal to this Court on December 5, 2008.

II

Whether a claim is constitutionally ripe for adjudication is a question of law that is reviewed de novo. *Ammex, Inc. v. Cox*, 351 F.3d 697, 706 (6th Cir. 2003) (citing *NRA of Am. v. Magaw*, 132 F.3d 272, 278 (6th Cir. 1997)). Federal court jurisdiction is limited by the Constitution to "cases" and "controversies." U.S. Const. art. III, § 2; *Flast v. Cohen*, 392 U.S. 83, 94–95 (1968); *Associated Gen. Contractors of Am. v. City of Columbus*, 172 F.3d 411, 415 (6th Cir. 1999) (quoting *Flast*, 392 U.S. at 94–95). Just as this restriction applies to federal district courts, the courts of appeals, and the U.S. Supreme Court, this restriction necessarily applies to federal bankruptcy courts. *See* 28 U.S.C. § 1334 (federal bankruptcy courts derive their jurisdiction from federal district courts). The ripeness doctrine has developed "to ensure that courts decide only existing, substantial controversies, not hypothetical questions or possibilities." *Deja Vu of Nashville, Inc. v. Metro. Gov't of Nashville & Davidson County*, 274 F.3d 377, 399 (6th Cir. 2001) (quoting *Dixie Fuel Co. v. Comm'r of Soc. Sec.*, 171 F.3d 1052, 1057 (6th Cir. 1999)). In other words, "[r]ipeness is a justiciability doctrine designed 'to prevent the courts, through premature adjudication, from entangling themselves in abstract disagreements.' " *Ky. Press Ass'n v. Kentucky*, 454 F.3d 505, 509 (6th Cir. 2006) (quoting *Thomas v. Union Carbide Agric. Prods. Co.*, 473 U.S. 568, 580 (1985)).

Notably, however, the ripeness doctrine arises "both from Article III limitations on judicial power and from prudential reasons for refusing to exercise jurisdiction." *Reno v. Catholic Soc. Servs.*, 509 U.S. 43, 57 n.18 (1993); *Warshak v. United States*, 532 F.3d 521, 525 (6th Cir. 2008) (en banc). As this Court has explained, "[t]he ripeness doctrine not only depends on the finding of a case and controversy and hence jurisdiction under Article III, but it also requires that the court exercise its discretion to determine if judicial resolution would be desirable under all of the circumstances." *Brown v. Ferro Corp.*, 763 F.2d 798, 801 (6th Cir. 1985). Only when a claim is not ripe within the meaning of Article III does a court lack jurisdiction over the subject matter. *Id.*

In this case, Educational Credit contends only that the question of whether Cassim's student loan debt was dischargeable was not constitutionally ripe for review. Educational Credit does not challenge prudential ripeness. In its brief, the crux of Educational Credit's argument is that an undue hardship determination made before a discharge is entered simply advises the parties that if a discharge order is entered, then the student loan debt will be included in the discharge. Notably, at oral argument, counsel for Educational Credit sought some distance from its earlier position that the question of whether student loan debt is dischargeable is never constitutionally ripe for review until the debtor has received a discharge. For the first time, Educational Credit took the position that the question is constitutionally ripe for review when it is "imminent" that a debtor will receive a discharge.

To support its position in its brief and at oral argument, Educational Credit emphasizes that, if a debtor does not complete a Chapter 13 plan, a determination that student loan debt is dischargeable becomes moot and any hearing that took place would have been unnecessary. Educational Credit stresses that many Chapter 13 plans ultimately fail, despite the fact that they are all premised on the finding that the debtor will be able to complete the plan. Educational Credit further highlights that a Chapter 13 case can be dismissed prior to discharge for many other reasons.

Neither the Supreme Court nor the Sixth Circuit have addressed whether the issue of the dischargeability of student loan debt is constitutionally ripe for review

before a debtor receives a discharge or will "imminently" receive a discharge. However, there are three cases decided by our sister circuits that merit discussion: *Bender v. Educational Credit Management Corp. (In re Bender)*, 368 F.3d 846 (8th Cir. 2004), and *Ekenasi v. Education Resources Institute (In re Ekenasi)*, 325 F.3d 541 (4th Cir. 2003), *Educational Credit Management Corp. v. Coleman (In re Coleman)*, 560 F.3d 1000 (9th Cir. 2009). Educational Credit relies heavily on *Bender*, contends that *Ekenasi* is inapposite, and criticizes *Coleman*.

First, in *Bender*, the Eighth Circuit Court of Appeals concluded that the debtor's petition to discharge her student loans in a bankruptcy proceeding was not ripe for review when she would not be entitled to a general discharge for at least three and a half years. 368 F.3d at 847. The court explained its reasoning as follows:

> We find it significant that the general rule of non-dischargeability of student loans is phrased as an exception to the Chapter 13 discharge, and a showing of "undue hardship" simply eliminates the exception. Accordingly, when student loans are discharged it is as part of the regular Chapter 13 discharge, rather than as a separate event.

*Id.*

While Educational Credit relies heavily on *Bender* in its brief, it is significant that *Bender* did not identify whether the ripeness determination was based on constitutional or prudential concerns. *See id.* at 848 ("In addition to . . . constitutional concerns, the ripeness doctrine allows the federal courts to avoid wasting scarce judicial resources in attempts to resolve speculative or indeterminate factual issues."). Moreover, the court did not hold that a debtor must first obtain a general discharge before the issue is ripe for review. Quite to the contrary, the court stated:

> As a matter of administrative convenience, of course, it makes sense to commence an adversary petition to determine undue hardship before the actual date of discharge, but such proceedings should take place relatively close to that date so that the court can make its determination in light of the debtor's actual circumstances at the relevant time.

*Id.* The court emphasized that such a practice would "allow a court to make its undue hardship determination on the basis of real rather than speculative circumstances." *Id.* Notably absent from the decision is any discussion related to subject matter jurisdiction.

Second, in *Ekenasi*, the Fourth Circuit Court of Appeals reversed the bankruptcy court's determination that the debtor was entitled to a discharge of his student loan debt based on undue hardship because of the speculative nature of the factual record before the bankruptcy court. 325 F.3d at 549. In reaching this result, the court stated that "we decline to adopt a hard and fast rule which would preclude bankruptcy courts from ever entertaining a proceeding to discharge student loan obligations until at or near the time the debtor has completed payments under a confirmed Chapter 13 plan." *Id.* at 547. However, the court noted:

> [I]t will be most difficult for a debtor . . . to prove with the requisite certainty that the repayment of his student loan obligations will be an "undue burden" on him during a significant portion of the repayment period of the student loans when the debtor chooses to make that claim far in advance of the expected completion date of his plan.

*Id.* In the case before it, the court found that the bankruptcy court's findings as to the presence of undue hardship and the evidence to support that determination had been "too speculative." *Id.* at 548.

Educational Credit contends that *Ekenasi* is inapposite to the issue before this Court because it did not address constitutional ripeness concerns. Educational Credit is correct that the Fourth Circuit did not explicitly address constitutional ripeness concerns. However, it is not entirely insignificant that constitutional ripeness is a jurisdictional prerequisite and that the court could have raised the issue sua sponte. *See Douglas v. E.G. Baldwin & Assocs., Inc.*, 150 F.3d 604, 607 (6th Cir. 1998) (explaining that "federal courts have an independent obligation to investigate and police the boundaries of their own jurisdiction"). Rather than do so, the court explicitly rejected a rule that would require a debtor to receive, or be about to receive a discharge under § 1328 before commencing an adversary proceeding.

The third, and final, case meriting attention is *Educational Credit Management Corp. v. Coleman (In re Coleman)*, 560 F.3d 1000 (9th Cir. 2009).[1] In *Coleman*, the Ninth Circuit Court of Appeals explicitly found that "[t]he dispute here is constitutionally ripe," even though the debtor had not yet received a discharge pursuant to § 1328. *Id.* at 1005. The court explained as follows:

> A "substantial controversy" arose between Coleman and Educational Credit when Coleman filed for bankruptcy protection under Chapter 13: Coleman's purpose in filing was to seek the discharge of her student loans, and Educational Credit seeks to prevent this. Further, the controversy here is certainly "definite and concrete, not hypothetical or abstract," because it is a controversy between Coleman and Educational Credit over a specific and defined debt.

*Id.* (footnote omitted).

Educational Credit criticizes *Coleman* for missing the "unique context" within which student loan dischargeability actions arise. Educational Credit contends that while a bankruptcy filing may create a controversy as to debts that are generally dischargeable, it does not create a controversy as to debts that are presumptively nondischargeable, such as student loan debt. Based on the presumptive non-dischargeability of student loan debt, Educational Credit contends that a controversy did not "arise" until Cassim filed her adversary complaint, and that filing of the complaint did not make the controversy ripe when a general discharge may never happen.

In this case, the question of whether Cassim's student loan debt owed to Educational Credit is dischargeable was constitutionally ripe for review by the bankruptcy court despite the fact that Cassim had yet to receive a discharge under § 1328. By filing for bankruptcy, Cassim sought to discharge her student loan obligations under § 523(a)(8), and Educational Credit, for its part, sought to prevent her

---

[1] The B.A.P. found an earlier decision in the case to be persuasive, despite the fact that the decision was vacated. *See Educ. Credit Mgmt. Corp. v. Coleman (In re Coleman)*, No. 06-16477, 2008 WL 2940306 (9th Cir. Aug. 1, 2008), *vacated*, 539 F.3d 1168 (9th Cir. Aug. 22, 2008). The Ninth Circuit vacated the decision that the B.A.P. found persuasive "[b]ecause the bankruptcy court's denial of Educational Credit's motion to dismiss was an interlocutory order" over which the court did not have jurisdiction absent certification under 28 U.S.C. § 1292(b). 539 F.3d at 1168. The most recent *Coleman* decision, discussed above, reached the same ultimate conclusion as the vacated decision.

from obtaining such relief. If Cassim prevailed, Educational Credit stood to lose some or all of its claim. The dispute thus involved a specifically-defined debt and a statutorily-based claim for relief that, Cassim, as a Chapter 13 petitioner, was entitled to pursue. The collision of these opposing interests produced a definite and substantial controversy between the parties, not an abstract disagreement. *See Coleman*, 560 F.3d at 1005. Resolution of Cassim's entitlement to relief from this obligation is material to her "fresh start," because her student loan debt constitutes a substantial component of her overall debt. Without question, Cassim's interest in adjudicating the discharge cannot be viewed as hypothetical, nor has Defendant suggested why its incentive to address the issue is insubstantial. Importantly, the statutory distinction between presumptively dischargeable and presumptively nondischargeable debts does not address the question of resolving Cassim's interest in discharging the debt or Educational Credit's interest in enforcing repayment of the debt.

Finally, it is significant that the bankruptcy court's confirmation of Cassim's plan was necessarily premised on a finding that she would complete the plan. *See* § 1325(a)(6). While it is true that factual developments may occur rendering it too speculative that Cassim would receive a discharge under § 1328, such that the existence of an actual, substantial controversy then ceased to exist, Educational Credit has not advanced any facts to suggest that Cassim is particularly unlikely to receive a discharge. Notably, Cassim's plan requires only a fifty dollar per month payment for approximately twenty-nine months and no facts of record suggest that she will not complete the plan.

In conclusion, it bears reiterating that Educational Credit has only challenged constitutional ripeness, which is more limited in scope than prudential ripeness. Educational Credit presents an issue of legitimate judicial concern in that events occurring subsequent to the filing of a Chapter 13 petition may alter the factual circumstances surrounding a debtor's ability to obtain a discharge under § 1328. Factual circumstances regarding the elements necessary to establish undue hardship under § 523(a)(8) may also counsel against making an undue hardship determination significantly before the debtor could obtain a discharge under § 1328. Under the factual

circumstances of this case, however, the concerns do not rise to a constitutional level and we see no reason to consider sua sponte any further prudential ripeness factors.

For these reasons, the decision below is AFFIRMED.